The judgment of the district court will be affirmed.

Siegfried **WACHTEL** and Wife, Roberta S. Wachtel, Plaintiffs-Appellants,

v.

Bryce **WEST** and Wife, Frances West, Defendants-Appellees.

No. 72-1800.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 6, 1973.

Decided April 11, 1973.

Thomas E. Watts, Jr., Nashville, Tenn., for plaintiffs-appellants.

J. Stanley Rogers, Garrett, Shields, Rogers & Parsons, Manchester, Tenn., for defendants-appellees.

8. In the case of those rare defendants who choose to defend themselves without counsel, the district court should, of course, inform them of their right to demand a jury trial.

Before PHILLIPS, Chief Judge, LIVELY, Circuit Judge, and YOUNG, District Judge.*

LIVELY, Circuit Judge.

This case concerns the Truth in Lending Act of 1968, 82 Stat. 146, 15 U.S.C. § 1601 et seq. More specifically involved is a portion of the Act codified as 15 U.S.C. § 1640, which provides civil liability for failure to make any of the disclosures required by the Act. Subsection (e) of Section 1640 is as follows:

> (e) Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation.

Appellants filed this action in the district court, asserting that jurisdiction was based on Title 15 U.S.C., Section 1640. The complaint alleged that the plaintiffs had borrowed money from the defendants on October 28, 1970, giving a second mortgage on their residence as security. It further alleged that the defendants failed to make the disclosures to them that are required by 15 U.S.C. § 1631.[1] In a separate paragraph the plaintiffs stated that they had notified the defendants of their intention to rescind the mortgage transaction for failure to make the required disclosures but that the defendants had taken actions inconsistent with rescission. The prayer for relief was three-fold:

(1) . . . for the damages permitted and described in title 15 U.S.C. § 1640, together with their costs and a reasonable attorney's fee in the cause;

(2) for a preliminary injunction to restrain the defendants from enforcing any remedy against the plaintiffs upon the second mortgage; and

(3) that the court declare the mortgage void and the preliminary injunction be made permanent.

The complaint was filed on April 25, 1972, and the defendants filed a timely motion to dismiss for failure to bring the action within one year of the accrual of the claim stated. The district court granted the motion and entered a judgment dismissing the action on its merits. The opinion of Judge Neese appears at 344 F.Supp. 680 (E.D.Tenn.1972).

The narrow question presented on appeal is whether a violation of the duty to disclose information to a borrower occurs at the time such disclosure is first required to be made, or whether it is a continuing violation until such time as the disclosure is actually made. In order to decide this question we must examine the overall purpose of the Act as well as the particular sections referred to in the complaint.

The purpose of Congress in enacting the Truth in Lending Act is set forth in 15 U.S.C. § 1601 as follows:

> § *1601. Congressional findings and declaration of purpose*
>
> The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this subchapter to

---

* The Honorable Don J. Young, District Judge of the United States District Court for the Northern District of Ohio, sitting by designation.

1. § *1631. General requirement of disclosure*
    (a) Each creditor shall disclose clearly and conspicuously, in accordance with the

regulations of the Board, to each person to whom consumer credit is extended and upon whom a finance charge is or may be imposed, the information required under this part.
    (b) If there is more than one obligor, a creditor need not furnish a statement of information required under this part to more than one of them.

assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.

Pursuant to § 1604 the Board of Governors of the Federal Reserve System issued its Regulation Z (12 CFR § 226 (1969)) which provides, in part, as follows:

## REGULATION Z

## PART 226—TRUTH IN LENDING

*§ 226.1 Authority, scope, purpose, etc.*

(a) *Authority, scope, and purpose.* (1) This part comprises the regulations issued by the Board of Governors of the Federal Reserve System pursuant to title I (Truth in Lending Act) and title V (General Provisions) of the Consumer Credit Protection Act, as amended (15 U.S.C. Section 1601 et seq.). Except as otherwise provided herein, this part applies to all persons who in the ordinary course of business regularly extend, or offer to extend, or arrange, or offer to arrange, for the extension of consumer credit as defined in paragraph (k) of § 226.2 and to all persons who issue credit cards.

(2) This part implements the Act, the purpose of which is to assure that every customer who has need for consumer credit is given meaningful information with respect to the cost of that credit which, in most cases, must be expressed in the dollar amount of finance charge, and as an annual percentage rate computed on the unpaid balance of the amount financed. Other relevant credit information must also be disclosed so that the customer may readily compare the various credit terms available to him from different sources and avoid the uniformed use of credit. This part also implements the provision of the Act under which a customer has a right in cer-tain circumstances to cancel a credit transaction which involves a lien on his residence. Advertising of consumer credit terms must comply with specific requirements, and certain credit terms may not be advertised unless the creditor usually and customarily extends such terms. This part also contains prohibitions against the issuance of unsolicited credit cards and limits on the cardholder's liability for unauthorized use of a credit card. Neither the Act nor this part is intended to control charges for consumer credit, or interfere with trade practices, except to the extent that such practices may be inconsistent with the purpose of the Act.

■ The purpose of disclosure is clearly to give the borrower an opportunity to do some comparative shopping for credit terms. In the words of Congressman Helstoski, the Act affords the consumer an opportunity to ascertain which offer (of credit terms) " . . . is best in terms of dollars and to obtain a better 'buy.'" 114 Congressional Record 1614 (Permanent Ed. Jan. 31, 1968). See Ratner v. Chemical Bank New York Trust Co., 329 F.Supp. 270, 276 (S.D.N.Y.1971); Bissette v. Colonial Mortgage Corporation, 340 F.Supp. 1191 (D.D.C.1972).

Though the Act is primarily concerned with sales of personal property involving consumer financing, credit card purchases and open-end credit, it also applies to real estate transactions, and special consideration is given to a very limited type of real estate credit transaction. Under 15 U.S.C. § 1635 a right of rescission is given to a borrower to whom credit is extended in a transaction where a security interest (other than a first lien to finance acquisition) is created or retained on real estate used or expected to be used as the principal residence of the obligor. This right does not depend on any wrongdoing by the lender, but may be exercised by the borrower for any reason so long as he acts within the prescribed time

and follows the prescribed procedure. He (the borrower) may rescind this type transaction at any time until midnight of the third business day following consummation of the transaction, or the delivery of the required disclosures, "whichever is later." Section 226.9 of Regulation Z contains detailed rules which are designed to compel notification to the borrower of his right to rescind and which require a delay in closing the credit transaction until the rescission period has passed.

Taking the allegations of the complaint as true, it appears that the appellees have violated the provisions of the Act and of Regulation Z. Because the right of rescission exists until the end of the third business day, or until disclosure, whichever is later, and it is alleged that no disclosure has ever been made, it may be that this remedy is still available to the appellants. The Act does not contain a statute of limitations for enforcement of the right to rescind. However, since rescission is an equitable remedy, presumably the defenses of laches or estoppel could be interposed to prevent a borrower from enjoying the benefit of the credit for a long period of time and then succeeding in having the transaction avoided to the detriment of the lender. It should be noted that the Act does not specifically provide that federal courts have jurisdiction of actions for rescission.

The appellant has attempted to engraft the "whichever is later" provision of § 1635 onto this action for damages under § 1640. However, this case is not concerned with the right of rescission, and at least one court has held that the two remedies are inconsistent, so that the election to proceed under one theory constitutes an abandonment of the other. Bostwick v. Cohen, 319 F.Supp. 875 (N. D.Ohio 1970). Here the complaint premised jurisdiction on § 1640, which provides for damages for failure to disclose the information set forth in the Act and specifically, on subsection (e), which confers jurisdiction upon United States district courts, together with other courts of competent jurisdiction. The same subsection requires an action under "this section" to be brought within one year from the date of the occurrence of the violation. We must determine when the violation occurs in a case where the required disclosures are not made.

The stated purpose of the Act is to enable the consumer "to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601. In order to make the opportunity for comparison meaningful, the borrower must have the required information in his possession before he becomes committed to any particular lender. This is expressed in § 1639(b), which provides:

*Form and timing of disclosure*

(b) Except as otherwise provided in this part, the disclosures required by subsection (a) of this section shall be made *before the credit is extended*, and may be made by disclosing the information in the note or other evidence of indebtedness to be signed by the obligor. (emphasis added)

The Act does not define the term [when] "the credit is extended," prior to which time it requires disclosures to be made. However, Regulation Z, § 226.-2(cc) is helpful in this respect. It reads as follows:

(cc) A transaction shall be considered consummated at the time a contractual relationship is created between a creditor and a customer irrespective of the time of performance of either party.

■ It thus appears that a credit transaction which requires disclosures under the Act is completed when the lender and borrower contract for the extension of credit. The disclosures must be made sometime before this event occurs. If the disclosures are not made, this violation of the Act occurs, at the latest, when the parties perform their contract. The provisions with respect to

the right of rescission seem to contemplate a continuing violation when the disclosures are not made, but such is not the case when damages are sought. In the present case performance of the contract and violation of the disclosure requirement took place on October 28, 1970, and the one-year statute of limitations began to run on that date. This action, filed one year five months and 28 days later, was barred.

The judgment is affirmed.

DON J. YOUNG, District Judge, (dissenting).

I respectfully dissent. The statute states:

It is the purpose of this [title] . . . to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit. 15 U.S.C. § 1601.

Congress, to effectuate this end, requires that a creditor make certain disclosures to the consumer. 15 U.S.C. §§ 1632–39. If the disclosures are not made, there are civil sanctions which may be imposed on the creditor, 15 U.S. C. § 1640, but the "action under this section may be brought . . . within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). The statute also gives the consumer the right to rescission, 15 U.S.C. § 1635, as explained in the majority opinion.

The majority holds that the rescission remedy provides sufficient protection for the consumer so that the violation as mentioned in § 1640(e) occurs at the time the parties entered into the agreement and the statute of limitations begins to run at that time. If the statute is to be interpreted as the majority have construed it, its effectiveness is limited. It is not difficult to imagine a situation where a consumer has entered into an agreement with a creditor which requires repayment of a loan over a period of five years or more. The creditor does not make disclosures as required by the Act and the consumer is an uninformed one whom the Act was designed to protect. The terms of the agreement are such that the offensive part of the financing does not evidence itself in the loan repayment schedule until after the first year. Under the majority opinion, the consumer will not be able to sue for damages when he becomes aware of the offensive financing since the statute of limitations has run. The consumer at this point is left with the rescission remedy only. Assuming a successful suit by the consumer, it still provides little deterrent effect for the creditor who chose not to disclose since the parties are merely returned to their original positions. In other words, if no disclosures are made the creditor need only fear that the contract may be rescinded but he need not fear any civil liability.

To protect the creditor from civil liability in these situations is to take much of the effectiveness out of the statute, since a creditor who chose not to make disclosures to an uninformed consumer would only have to delay the operation of an offensive part of the agreement until one year after the parties entered into it.

As a general rule, statutes of limitations in actions for fraud commence to run at the time when the fraud is discovered, not when the fraudulent acts occurred. Basically, the statute involved here is designed to prevent frauds being perpetrated by sophisticated lenders upon uniformed borrowers. It would therefore appear that these general principles should be applied to the limitation period in the statute here involved. If the limitation of the statute is thus construed, the "violation" occurs when the consumer knows or should know of the undisclosed credit terms. This would make the knowledge of the violation a factual matter. For example, in the hypothetical situation posed above, the consumer knew or should have known of the violation the moment the offensive financing arrangement surfaced in the

loan repayment schedule. Under my construction of the Act, the consumer then has one year from this point in time to initiate his action. Obviously, the creditor has it within his power to avoid any liability under the statute by making disclosures as required by law prior to entering into the agreement.

I would hold that the one year limitation did not commence to run until the plaintiffs discovered the defendants' violation of the statute and made the demand for rescission which was refused by the defendants. If, as the majority suggests, there was at that time a requirement to elect between the legal and equitable remedies, the plaintiffs made that election by commencing this action, which was done well within the statutory one year limitation after plaintiffs discovered the violation of their rights under the Act. The judgment of the District Court should be reversed, and the case remanded.