Steven **GOLDMAN**, on his own behalf and on behalf of a Class consisting of all other First Bankamericard cardholders similarly situated, Plaintiff, ·

v.

The **FIRST NATIONAL BANK OF CHICAGO**, Defendant.

No. 71 C 1653.

United States District Court, N. D. Illinois, E. D.

Feb. 5, 1975.

Pressman & Hartunian, Chicago, Ill., Irwin R. Shechtman, Palatine, Ill., for plaintiff.

Leslie A. Hodson, Don H. Reuben, Joseph DuCoeur, Alan I. Becker, Kirkland & Ellis, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

MARSHALL, District Judge.

Before me are defendant's motion to strike and dismiss and plaintiff's motion for summary judgment as to Counts 1–3 of the complaint. The material facts are undisputed. Based on the facts, the

judgment of the court is that summary judgment should be granted for the defendant.

The plaintiff's third amended complaint is in six counts. Counts 1–3 alleged violations of sections 121(a), 127 (a) and 130(a), of the Truth in Lending Act,[1] 15 U.S.C. §§ 1631(a), 1637(a), and 1640(a) (1970). The remaining counts allege violations of the Illinois Consumer Fraud Act, Ill.Rev.Stat., ch. 121½, § 262 (1973), and the Illinois Deceptive Trade Practice Act, Ill.Rev.Stat., ch. 121½ § 312(12) (1973). The substance of the controversy lies in the disclosures made by the defendant in its Bankamericard open end credit plan.[2] Jurisdiction of Counts 1–3 rests on 15 U.S.C. § 1640(e) and is pendent as to Counts 4–6.

Under the Bankamericard Agreement a cardholder may make merchandise purchases and borrow money with his card. At the end of a billing period a cardholder receives a statement itemizing the previous balance, all current charges and credits to the account, finance charges, if any, and the new balance, including finance charges.

A finance charge of 1½ percent per month is applied on the outstanding average daily balance due on the account during the billing period. If the entire balance for merchandise purchases is paid and received within 25 days of the billing date shown on the billing statement, no finance charge is imposed. On the other hand, if full payment is not received within 25 days, a finance charge accruing from the billing date is imposed on the unpaid balance at the rate described above. The Bankamericard Agreement states that "Finance charges shall commence 25 days from the billing date." Whether this provision is consistent with the method actually used to de-

termine finance charges is the center of the controversy.

Plaintiff used his Bankamericard several times in the seven or eight months following his receipt of it. But he always paid the balance due within 25 days of billing date and thus incurred no finance charge. The plaintiff's February 8, 1971, bill carried new purchases of $79.04. To avoid incurring finance charges, this amount had to paid in full by March 5, 1971. No payment was received by this date; as a result, the March 8 statement reflected a finance charge of $1.19, which accrued retroactively to the February 8, 1971, billing date. Thus, the plaintiff argues that the charge did not commence 25 days after the billing date, and hence the disclosure requirements of the Truth in Lending Act were violated.

■ The clear purpose of the Truth in Lending Act is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601 (1970). Thus the Act assures that the cost of credit will be disclosed and that other credit terms will be disclosed so that consumers can compare various plans and make an informed decision on the use of credit. 12 C.F.R. § 226.1(a)(2) (1974). See S.Rep.No.392, 90th Cong., 1st Sess. (1967); H.R.Rep.No.1040, 90th Cong. 1st Sess. 7, 13 (1967); 2 U.S.Code Cong. & Admin.News, p. 1962 (1968).

■ The Act, as interpreted by Regulation Z of the federal reserve system, 12 C.F.R. § 226.1 et seq. (1974), requires that before the first transaction is made on an open end plan, the creditor, in a single statement, must clearly, conspicuously and in meaningful sequence, disclose to the prospective obligor the condi-

1. The Truth in Lending Act is Title I, 15 U.S.C. § 1601 et seq. (1970), of the Consumer Credit Protection Act, amended P.L. No. 93–495 (October 28, 1974).

2. "The term 'open end credit plan' plan refers to a plan prescribing the terms of credit

transactions which may be made thereunder from time to time and under the terms of which a finance charge may be computed on the outstanding unpaid balance from time to time thereunder." 15 U.S.C. § 1602(i) (1970); see 12 C.F.R. § 226.2(r) (1974).

tions under which a finance charge may be imposed, an explanation of any free ride period, the method of determining the finance charges, the periodic rate, and corresponding annual percentage rate. 15 U.S.C. §§ 1631, 1637 (1970); 12 C.F.R. §§ 226(a), 226.7(a) (1974). In essence, the plaintiff's complaint charges that the free ride period was not disclosed clearly and conspicuously.

■ The plaintiff strenuously urges that the disclosures made by the defendant did not meet the broad objectives of the remedial Truth in Lending Act. For its part, the defendant asserts with equal vigor that the disclosure was adequate, and that the method of calculating the finance charge was the fairest method used in the industry and consistent with banking custom.[3] The question of whether the disclosure was adequate need not be decided, however, because the plaintiff's claim under the Act is barred by the applicable statute of limitations.

Section 130(e), 15 U.S.C. § 1640(e) (1970), of the Act provides:

> Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation.

The facts surrounding the statute of limitations defense are not in dispute. In April of 1970, the plaintiff applied for a Bankamericard on a standard form supplied by the defendant. In late April or early May he received the card along with the Bankamericard Agreement and a *Disclosure Statement as Required By the Truth In Lending Act.* For purposes of this action, the disclosures were made when the plaintiff received these written statements along with his card.[4] On July 1, 1970, the plaintiff first used

the card. The first finance charge was imposed on March 8, 1971, and the complaint was filed 4 months later on July 8, 1971. On these facts there are three possible times from which the statute could run. The defendant urges that it runs from the date of disclosure or at the latest the date the card was first used. Under either of these interpretations, the statute would bar this action. The plaintiff asserts the third alternative; the statute runs from the date the first finance charge was imposed, March 8, 1971. If this is correct, the complaint was filed within the one-year period.

Of the few reported cases dealing with the statute of limitations under the Act, not one has faced the precise issue presented by this action. In Wachtel v. West, 476 F.2d 1062 (6th Cir.) cert. denied, 414 U.S. 874, 94 S.Ct. 161, 38 L.Ed.2d 114 (1973), the plaintiffs alleged that they had borrowed money from the defendants on October 28, 1970, giving a second mortgage on their residence. The complaint was filed on April 25, 1972, more than a year after the loan was made. On these facts the lower court dismissed the action on the merits (344 F.Supp. 680 (E.D.Tenn.1972)). The court of appeals affirmed the lower court stating:

> [A] credit transaction which requires disclosures under the Act is completed when the lender and borrower contract for the extension of credit. The disclosures must be made sometime before this event occurs. If the disclosures are not made, this violation of the Act occurs, at the latest, when the parties perform their contract. 476 F.2d at 1065.

Thus, the court rejected any notion that violations under the Act were continuing when damages were sought.

---

3. Affidavit of John T. Borman, filed Nov. 12, 1973.

4. The Act requires that all mandated disclosures be made in a single written statement which may be retained by the consumer. 12 C.F.R. § 226.7(a) (1974). On the *Disclosure Statement* part of the application was

capable of retention. The Bankamericard Agreement is on the reverse side of the application that was sent to the defendant. A second *Disclosure Statement* and Bankamericard Agreement did, however, accompany the credit card. These are capable of retention. *See* 12 C.F.R. § 226.7(a) (1974).

*Wachtel* is distinguishable from the present action because it was not an open end credit arrangement. Only a single credit transaction was contemplated: a loan secured by a second mortgage on the plaintiff's residence. Moreover, the challenged disclosure and the performance of the contract both took place on the same day.

A more recent decision, Stevens v. Rock Springs National Bank, 497 F.2d 307 (10th Cir. 1974), considered a similar problem and the interpretation of section 1640(e) utilized in *Wachtel*. Stevens alleged that he purchased a mobile home in July, 1971, executing a purchasing agreement, a promissory note, and a security agreement in favor of the defendant. The second plaintiff, Hinkle, signed a purchase agreement for a mobile home on April 4, 1972, but did not execute a promissory note and security agreement in favor of the defendant until approximately April 18. The two complaints were filed on April 13, 1973.

The defendants argued that both claims were barred by the one year statute of limitations, while the plaintiffs argued that the duty of disclosures was continuing and therefore the statute had not run on either claim. Rejecting plaintiffs' argument, the court agreed generally with the language of *Wachtel*:

> While in this opinion we do not necessarily adopt the Sixth Circuit's reference to the date of "performance" as the date on which the violation occurs, we nevertheless agree generally with the proposition that violation of the disclosure requirements . . . occurs at a specific time from which the statute will then run. Thus it does not necessarily become a continuing failure or breach. 497 F.2d at 309.

The court went on to hold that the statute had run on Stevens because the credit contract had been executed and credit extended more than one year before the complaint was filed. Hinkle's claim was not barred, however, because he did not become bound on the credit agreement until April 17, 1972, the date he signed the note and security agreement.

Like *Wachtel*, the transactions in *Stevens* concerned consumer loans not under an open end credit plan. The decision, therefore, is not controlling in an action under an open end plan. Nevertheless, the court's interpretation of the limitations period does hold that violations are not continuing and that the violation occurs when the credit contract is executed.

The only reported case discussing the statute of limitations and open end credit transactions is White v. Central Charge Service, Inc., [1969–1973 Transfer Binder] CCH Cons. Credit Guide, ¶ 99,170, at 89,063 (D.C.Super.Ct.1972). The plaintiff alleged a violation of section 1637 (b)(2) of the Act, which requires a brief description in a periodic billing statement of the goods purchased. The court held that the statute ran from the date the billing was received, because prior to that time the consumer would not be aware of the statement's content.

Both parties maintain that *White* supports their position. A close analysis of the decision, however, reveals that it differs substantially from the facts of the instant action. The disclosure violation was alleged in the billing statement, and not in the disclosure statement. The inadequate billing statement was the actionable violation. Obviously a statement cannot be inadequate until it is made. In the instant case, however, the plaintiff contends the imposition of finance charges over a year after he received the allegedly defective disclosure statement is the actionable violation and the point from which the statute runs.

The plaintiff's complaint alleges, in three counts, violations of the Act. Each of the counts alleges violations of section 1631(a) and 1637(a) of the Act. Section 1631(a) requires that each creditor disclose clearly and conspicuously in accordance with the Board's regulations, the information required by the Act. Section 1637 details the required disclosure under open end credit plans.

(a) Before opening any account under an open end consumer credit plan, the creditor shall disclose to the person to whom credit is to be extended each of the following terms, to the extent applicable:

(1) The conditions under which a finance charge may be imposed, including the time period, if any, within which any credit extended may be repaid without incurring a finance charge.

The statute thus requires disclosure to be made *before* an account is opened. Regulation Z, 12 C.F.R. § 226.7(a)(1) (1974), amplifies this requirement.

Before the first transaction is made on any open end credit account, the creditor shall disclose to the customer in a single written statement, which the customer may retain . . . each of the following items, to the extent applicable:

(1) The conditions under which a finance charge may be imposed, including an explanation of the time period, if any, within which any credit extended may be paid without incurring a finance charge.

Again the stress is on disclosure *before* the first transaction is made in an open end account. The statute of limitations, 15 U.S.C. § 1640(e), provides that an action may be brought "within one year from the date of the occurrence of the violation."

On the basis of the statutes cited and the previously discussed case law, it is clear that the statute runs from the date of disclosure and not the date the finance charge is imposed. As previously discussed, the purpose of the statute is to provide full disclosure to the consumer of the cost of using credit to the end that he may more intelligently use it. Disclosure is what Congress intended. Violation of the disclosure provision must occur, if at all, sometime before the first transaction occurs. In this case, disclosure occurred when defendant received and accepted the card from the defendant in April or May, 1970, or, at the very latest, on July 1, 1970 when plaintiff first used the card. Thus, the statute of limitations bars this action since the complaint was filed July 8, 1971, more than one year after the disclosure was made.

To the extent that the previously cited cases dealing with section 1640(e) are applicable to this case, the result reached here is in accord. By holding that the statute runs from the time of disclosure, the continuing failure theory is rejected. Moreover, the result is consistent with *Stevens* in holding that the statute runs from the time the contract is executed.

Plaintiff contends that the statute must run from the date the finance charge is imposed because otherwise no damages would be recoverable under the Act, section 1640(a), amended Pub.L.No. 93–495, § 408 (October 28, 1974). Under the former version of section 1640(a), a civil penalty could be imposed although no finance charge was imposed. Mourning v. Family Publications Service, Inc., 411 U.S. 356, 376, 93 S.Ct. 1652, 36 L.Ed. 2d 318 (1973). The amended version, which is applicable to this case, Pub.L. No. 93–495, § 408(e) (October 28, 1974), does not change this result.

Accordingly, for the foregoing reasons, summary judgment is Granted for defendant and against plaintiff on Count 1 through 3. Because of this disposition, defendant's motion to dismiss the pendent counts 4 through 6, also is Granted, and plaintiff's motion for reconsideration of denial of class certification is moot. Thereupon, It Is Ordered and Adjudged that the plaintiff's action be Dismissed and that defendant have judgment for its costs.