**William SUTLIFF, et al., Plaintiffs,**

v.

**The COUNTY SAVINGS AND LOAN COMPANY, Defendant.**

**Civ. A. No. C80–2029.**

United States District Court,
N. D. Ohio, E. D.

March 12, 1982.

David E. Williams, Williams, Purtill, Zumkehr & Welser, Kent, Ohio, for plaintiffs.

David J. Naftzinger, Cleveland, Ohio, for defendant.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

This action is brought by William and Linda Sutliff (the Sutliffs) against The County Savings and Loan Company (County Savings) for alleged violations of the Truth in Lending Act (TILA), 15 U.S.C. § 1601, et seq., and The Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691, et seq. The Sutliffs also allege two violations of state law.

Before the Court is the Motion of Defendant County Savings for Summary Judgment on the first, second, and third claims of plaintiff's Complaint, and Motion for Dismissal of the fourth and fifth claims on jurisdictional grounds. Also pending is the Motion of the Sutliffs for Summary Judgment on the first, third and fourth claims of their Complaint. Upon consideration of the briefs, affidavits, and exhibits filed by both parties, and for the reasons set forth below, County Savings' Motion is granted in part and denied in part; the Sutliffs' Motion is granted in part and denied in part.

The undisputed facts show that on October 26, 1967, County Savings loaned the Sutliffs Sixteen Thousand Four Hundred Dollars ($16,400) for the purchase of their residence in Ravenna, Ohio. The loan was evidenced by a promissory note, secured by a mortgage against the Sutliffs' home, which provided for installment payments of not less than $124 per month. The note also provided for an interest rate of 6.5% per annum and was to become due and payable three full years from its date, although the amortization schedule for the note was based on a 20 year maturity. The note authorized an 8% per annum increase in the interest rate, on the unpaid principal and interest, after the three year maturity date.

In July, 1974, more than three years after the note had become due, County Savings sent the Sutliffs a letter advising that the loan was being called, but that they could continue the loan at an increased rate of 8% per annum. When the Sutliffs complained to County Savings, the demand provisions of the note were explained to them and they were told that because the loan had become due in 1970, County Savings could call the note and increase the interest rate if the Sutliffs wished to continue to pay it off monthly. The Sutliffs continued to make payments on the loan without executing any documents, and County Savings never presented them with any disclosure statements relative to the increased rate.

On January 15, 1980, County Savings again raised the interest rate on loans made prior to December 31, 1968 to 11% per annum. On February 1, 1980, County Savings sent a letter to the Sutliffs advising them that it was declaring their loan due and payable but that the loan could be continued at the same monthly payment with an 11% interest rate, effective January 1, 1980. Once again, the Sutliffs complained to County Savings, were told that its actions were permissible, and no documents were executed or disclosures made regarding the increased rate.

It was at this point that the Sutliffs sought the advice of legal counsel, who sent a letter to County Savings indicating several reasons why the increased rate was illegal, and also advising that the Sutliffs would continue to make monthly payments under protest. This action was filed on November 3, 1980.

The Sutliffs make several claims with regard to the actions of County Savings: (1) that County Savings violated the TILA when it increased their interest rate in 1974 and 1980, without making the requisite disclosures; (2) that because of the TILA violations, they have a right to rescind their obligation; (3) that defendant violated the Equal Credit Opportunity Act (ECOA) and Regulation B thereunder; and (4) that the Court should exercise pendent jurisdiction over their state law claims.

1310

## I. The Truth In Lending Act Claims

### A. The 1974 Increase

■ Defendant County Savings contends that any claims the Sutliffs may have had regarding the increase in 1974 are no longer actionable due to the limitations period applicable to such claims. 15 U.S.C. § 1640(e) provides:

Any action under this section may be brought in any United States District Court, or in any other court of competent jurisdiction, *within one year* from the date of the occurrence of the violation. [Emphasis added]

A violation occurs on the date of the transaction and the limitation period begins to run at that time. There is no continuing violation of the statute. *Wachtel v. West*, 476 F.2d 1062 (6th Cir. 1973); *Rust v. Quality Car Corral, Inc.*, 614 F.2d 1118 (6th Cir. 1980).

■ The Sutliffs argue that this case should be an exception to the rule stated in *Wachtel*, and that the Court should apply the doctrine of fraud which would toll the statute of limitations until the fraud is actually discovered. The Sutliffs apparently are seeking application of the fraudulent concealment doctrine, *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1874), which tolls the statute as long as the fraud is concealed, or the defendant fails to disclose facts it has a duty to disclose. In *Chevalier v. Baird Savings Association*, 371 F.Supp. 1282 (E.D.Pa.1974), cited by plaintiffs, the Court expressed the view that the doctrine of fraudulent concealment may well be applicable to TILA violations; however, there must be a fraudulent intention to prevent the disclosure. In this case, as was the case in *Chevalier*, the Sutliffs have made no allegations of fraud in their complaint. Therefore, there is no reason to disturb the rule established in *Wachtel*. Any alleged violation of the statute in this case occurred in October, 1974. Because plaintiff's complaint was not filed until November 3, 1980, the claim for the 1974 increase is time barred by the one year statute of limitations contained in 15 U.S.C. 1640(e). Therefore, summary judgment is granted in favor of County Savings on the 1974 increase.

### B. The 1980 Increase

The Sutliffs contend that County Savings' act of calling their loan due and increasing the interest rate in 1980 constituted a "refinancing" or the increase of an existing obligation within the meaning of Section 226.8(j) of Regulation Z, which would entitle them to the TILA disclosures. Regulation Z, 12 C.F.R. § 226.8(j) provides in part:

If any existing extension of credit is refinanced, or two or more existing extensions of credit are consolidated, or an existing obligation is increased, such transaction shall be considered a new transaction subject to the disclosure requirements of this part. . . .

County Savings counters that Section 226.-8(j) would apply only if its 1980 action represented a refinancing of the Sutliffs' loan. However clever they may be, County Savings' arguments as to why no refinancing has occurred, and therefore no TILA disclosures are required, are not persuasive.

■ In addition to the authority given to the Federal Reserve Board (15 U.S.C. § 1604) to promulgate interpretive regulations (such as Regulation Z) for the administration of the Act, the Board also was authorized to issue opinion letters interpreting the Act and Regulations. The Federal Reserve Staff has on several occasions expressed the opinion that under Regulation Z, an increase in the interest rate on a demand note which does not otherwise provide for a variation in rate is a new transaction and is subject to the disclosure requirements of § 226.8 of Regulation Z. See Federal Reserve letters of June 26 and July 1, 1969, Cons.Cred.Guide (CCH) ¶¶ 30,065, 30,-078; Letter No. 710, Cons.Cred.Guide (CCH) ¶ 31,009; Letter No. 815, Cons.Cred. Guide (CCH) ¶ 31,137; and Letter No. 857, Cons.Cred.Guide (CCH) ¶ 31,179. The note in this case provided for an automatic increase in the interest rate to 8% per annum after its maturity. County Savings appar-

ently chose not to increase the rate to 8% until 1974. In so doing, it would appear that under the Federal Reserve Staff's interpretation of Regulation Z, no disclosures were required because the loan documents provided for that variation in rate. The note, however, did not provide for any variation beyond the 8% rate. Because the 1980 increase to 11% was not authorized by the loan document, the Federal Reserve Staff's interpretation of Regulation Z would make the increase subject to the disclosure requirements of Regulation Z. The Supreme Court has held, in *Ford Motor Credit Co. v. Milhollin*, 442 U.S. 940, 99 S.Ct. 2880, 61 L.Ed.2d 309 (1980), that Federal Reserve interpretations are entitled to deference from the courts unless such interpretations are irrational. The Federal Reserve Staff's interpretations have been clear and consistent with regard to this issue; hence there is no reason for this Court to "exercise its own judgment to adopt the most logical application of the statute and the regulations to the facts of this case", as urged by the defendant.

County Savings also argues that because the Sutliffs did not agree to the 1980 increase and have been paying it under protest, then as a matter of contract law, there was never a consummation of a credit contract between the parties and no disclosure obligation ever arose. This argument also is not well taken. The purpose of the TILA is to assure a meaningful disclosure of credit terms so that the consumer will be aware of the cost of credit, will be able to compare more readily the various credit terms available to him, and may avoid the uninformed use of credit. See 15 U.S.C. § 1601. The only way that these objectives could be accomplished would be through disclosures made prior to the consumer entering into any contract. It would certainly undermine the stated purpose of the Act to require creditors to make disclosures after a credit contract has been entered into.

There is no doubt that County Savings' act of increasing the interest rate on the Sutliffs' demand obligation in 1980 constituted a new transaction within the meaning of Section 226.8(j) of Regulation Z, which requires that disclosures be made prior to the increase. There also is no question that County Savings did not issue the required disclosures. Consequently, there is no genuine issue as to any material fact with regard to the 1980 increase, and the Sutliffs are entitled to judgment as a matter of law on that issue.

## II. The Rescission Claim

■ The Sutliffs' Complaint alleges that County Savings failed to notify them of their right to rescind this transaction as required by 15 U.S.C. § 1635 and Regulation Z. Title 15 U.S.C. § 1635 provides a consumer a right of rescission in credit transactions in which a security interest is taken in the consumer's residence. However, 15 U.S.C. § 1635(e) and Section 226.-9(g)(1) of Regulation Z specifically exempt transactions wherein there is the "creation, retention or assumption of a first lien ... to finance the acquisition of a dwelling in which the customer resides or expects to reside." 12 C.F.R. § 226.9(g)(1).

The Sutliffs did not address this issue in their Motion for Summary Judgment nor in their Brief in Opposition to County Savings' Motion. However, it is clear from their Complaint, as well as the exhibits submitted by County Savings, that the note executed by the Sutliffs represents a purchase money loan for the acquisition of their residence, and the mortgage given by them to secure that note is the first lien on their residence. Although the 1980 interest rate increase was a new transaction within the meaning of the TILA and Regulation Z, County Savings retained its first lien on the Sutliffs' residence which it acquired as security for the purchase money loan. Therefore, this transaction is exempt under § 1635(e). Accordingly, summary judgment is granted in favor of County Savings on the Sutliffs' claim for rescission.

## III. The ECOA Claims

Title 15 U.S.C. § 1691(a) provides that it "shall be unlawful for any creditor to discriminate against any applicant, with re-

spect to any aspect of a credit transaction ... on the basis of ... sex or marital status...." Under Section 202.2 of Regulation B, an applicant is "any person who requests or who has received an extension of credit from a creditor ..." 12 C.F.R. § 202.2(e); credit transaction means "every aspect of an applicant's dealing with a creditor regarding an application for, or an existing extension of, credit ..." 12 C.F.R. § 202.2(m); and, an extension of credit includes the refinancing or renewal, or "the continuance of existing credit without any special effort to collect at or after maturity." 12 C.F.R. § 202.2(q). The Sutliffs contend that County Savings' action of increasing the interest rate on their loan in February, 1980 after the loan had matured, and without taking action to collect it, constituted an extension of credit for purposes of the ECOA and Regulation B. As such, they argue, County Savings was required to treat each of them as individuals and to inquire into their individual credit-worthiness, and/or the necessity for having more than one obligor on their note. Because no individual determination was made, the Sutliffs contend that County Savings discriminated against them by summarily obligating and continuing to obligate both of them to an extension of credit simply because they are married, in violation of the ECOA.

■ Section 202.7(d) of Regulation B provides that when an applicant qualifies for requested credit under the creditor's standards of credit-worthiness, the creditor "shall not require the signature of an applicant's spouse or other person, other than a joint applicant". 12 C.F.R. § 202.7(d). However, that section does not apply to the situation in this case. If either William or Linda Sutliff had been the sole obligor on the original note, summarily requiring the other party to become an obligor in the 1980 transaction could conceivably violate the Act. The promissory note involved here, however, was signed by both William and Linda Sutliff in October, 1967; they were joint obligors on the original note. Therefore, the 1980 extension of credit was to both Sutliffs as joint applicants under

§ 202.7(d). Even if both plaintiffs signed the original note pursuant to a policy of County Savings which required both spouses' signatures on a credit instrument, as the Sutliffs argue, that transaction took place in 1967—almost seven years prior to the 1974 effective date of the ECOA. There is nothing in the Act or its legislative history to indicate that it should have retroactive application. Because both Sutliffs were obligated on the original 1967 transaction, and neither of them has signed new credit documents since that time, it is the opinion of this Court that County Savings continued to obligate both of them, not because they are married but because both Sutliffs were the original obligors. County Savings was not required to treat them as individual applicants in the 1980 extension of credit.

■ The Sutliffs also claim that County Savings failed to give them notice when their interest rate was increased in February, 1980, as required by the ECOA. Section 202.9(a)(iii) of Regulation B requires a creditor to give notice within 30 days after the creditor takes "... adverse action regarding an existing account". 12 C.F.R. § 202.9(a)(iii). Adverse action is defined in Section 202.2(c) as:

> * * * termination of an account or an unfavorable change in the terms of an account that does not affect all or a substantial portion of a classification of a creditor's accounts...." 12 C.F.R. § 202.2(c)(ii).

It is apparent, from the unrefuted affidavit of County Savings' Executive Vice President, that the 1980 increase in interest rates applied to all of County Savings' borrowers of record prior to December 31, 1968, who had mortgage loans evidenced by promissory notes maturing in three to five years. Adverse action, within the meaning of the ECOA and Regulation B, is action taken which is unique to the plaintiffs or which only affects a small number of a class of accounts. Because the same action was taken on all mortgage loans in the same classification as the Sutliffs' loan, the 1980 increase did not constitute adverse action;

therefore, no notification was required by County Savings.

For the foregoing reasons, the Court finds that there is no genuine issue of any material fact with regard to the Sutliffs' claims under the ECOA, and County Savings is entitled to judgment as a matter of law on those claims.

### V. The Fourth and Fifth Claims—Pendent Jurisdiction

The Sutliffs' fourth and fifth claims are premised on state law and no independent basis for federal jurisdiction over these claims has been asserted. Plaintiffs urge this Court to exercise pendant jurisdiction over these claims, citing inconvenience, burdensomeness, and expense as factors to be considered by the Court.

The fourth claim is based on Ohio Revised Code, Section 4112.021, which is the State of Ohio's counterpart to the ECOA. Plaintiffs concede that this claim under state law is virtually identical to its ECOA claim, and that disposition of the ECOA claim will be dispositive of the state claim. Because the Court has determined that County Savings did not violate the ECOA, there is no reason for the Court to make a determination of the state law claim.

■ The fifth claim involves allegations that County Savings engaged in unlawful and fraudulent practices in its dealing with the Sutliffs, and that the change in terms of plaintiffs' obligation is legally unenforceable by virtue of the Statute of Frauds, Ohio Revised Code, Section 1335.05. Because resolution of this claim would require a determination of factual questions not required for disposition of the federal claims, this Court, in the interest of judicial economy, declines to exercise its pendent jurisdiction. See *Copley v. Rona Enterprises, Inc.*, 423 F.Supp. 979 (S.D.Ohio 1976). Accordingly, the Sutliffs' fourth and fifth claims are hereby dismissed.

### Remedy

The Court having found, as a matter of law, that County Savings violated the disclosure requirements of the TILA and Regulation Z when it increased the interest rate on the Sutliffs' loan in 1980, the Sutliffs are entitled to recover a civil penalty for that violation. 15 U.S.C. § 1640(a)(2) permits an injured debtor to recover "twice the amount of the finance charge in connection with the transaction" but no more than $1,000. The Sutliffs' actual damages measured by the interest differential between 8% per annum and 11% per annum from January 1, 1980 through December 31, 1981, are Five Hundred Forty-Five Dollars ($545). Doubling this amount will exceed the $1,000 ceiling; therefore, the recovery will be limited to $1,000.

■ The question remaining is the Sutliffs' claim that each of them is entitled to the $1,000 statutory penalty because they are both obligated on the note. This Court agrees. Title 15 U.S.C. § 1640(a) provides that "any creditor" who fails to fulfill disclosure requirements to "any person", is liable to "such person" for the statutory penalty. Both William and Linda Sutliff signed the promissory note, and it is clear from the face of the note, that each of them is jointly and severally liable for repayment of the loan to County Savings. Although a creditor need provide only one disclosure statement to joint obligors, under 15 U.S.C. § 1631(b), this does not limit the right of other obligors to recover if disclosure is faulty as to one. *Mirabal v. General Motors Acceptance Corporation*, 537 F.2d 871 (7th Cir. 1976). County Savings extended credit to both William and Linda Sutliff, and failed to make proper disclosures to both of them. Therefore, County Savings is liable to both William and Linda Sutliff, separately, for the statutory penalty of $1,000. See *Mirabal, supra; Allen v. Beneficial Finance Co. of Gary*, 531 F.2d 797 (7th Cir. 1976); *Davis v. United Companies Mortg. & Inv. of Gretna*, 551 F.2d 971 (5th Cir. 1977); *Mason v. General Finance Corporation of Virginia*, 401 F.Supp. 782 (E.D.Va.1975); *cf. Barash v. Gale Emp. Credit Union*, 659 F.2d 765 (7th Cir. 1981) (holding creditor liable to guarantor). *But see Riggs v. Government Employees Financial Corp.*, 623 F.2d 68 (9th Cir. 1980); *Powers v. Sims*, 542 F.2d 1216

(4th Cir. 1976); *In Re Wilson*, 411 F.Supp. 751 (S.D.Ohio 1975).

Pursuant to 15 U.S.C. § 1640(a)(3), the Sutliffs are also entitled to recover costs and attorney's fees. The Court directs counsel for the parties to meet within ten (10) days of the date of this Memorandum and Order and make sincere efforts to agree on reasonable attorney's fees. In the event that counsel cannot agree, within 10 days, upon a fee which this Court finds reasonable, then counsel for plaintiff shall file with the Court a statement of costs and attorney's fees. After considering any objections by counsel for defendant, the Court will make a determination and will award those costs and attorney's fees which it deems appropriate.

In summary:

(1) Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is granted in favor of County Savings on the 1974 issue in the first claim of plaintiff's Complaint; and on the second and third claims of the Complaint.

(2) County Savings' Motion to Dismiss the fourth and fifth claims is granted, and those claims are hereby dismissed.

(3) Summary judgment is granted in favor of the Sutliffs on the 1980 increase issue in the first claim of their Complaint. Summary judgment is denied on all other claims.

(4) The Sutliffs are entitled to recover the statutory penalty of $1,000 each, or a total of $2,000, from County Savings, as well as their costs and reasonable attorney's fees.

IT IS SO ORDERED.