Calvin Morgan **BISSETTE**, and Frances T. Bissette, for themselves and for all others similarly situated,

v.

**COLONIAL MORTGAGE CORPORA-TION OF D. C.**, Appellant.

No. 72–1742.

United States Court of Appeals, District of Columbia Circuit.

Argued March 1, 1973.

Decided April 12, 1973.

Joseph V. Gartlan, Jr., Washington, D. C., for appellant.

Benny L. Kass, Washington, D. C., for appellees.

Before McGOWAN and WILKEY, Circuit Judges, and ROBERT VAN PELT,* Senior United States District Judge for the District of Nebraska.

WILKEY, Circuit Judge:

This case arises on appeal from the District Court's grant of summary judgment for the Bissettes (husband and wife) on their complaint seeking damages and a declaration that Colonial Mortgage Corporation of D. C. violated the Truth in Lending Act.[1] The trial court, 340 F.Supp. 1191, explicitly refused to make any finding as to when a contractual relationship between plaintiffs and defendants arose. Therefore, its precise and only holding was that Truth in Lending Act disclosures made at the time of "settlement" or "closing" in a home purchase and mortgage transaction come too late to satisfy the Act's requirements, even if no contractual relationship between the borrower and lender was established prior to that time. We disagree, reverse the grant of

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

1. 15 U.S.C. § 1601 et seq. The court also denied defendant-appellant's motion for

summary judgment. Decision on whether or not to certify the case as a class action was held in abeyance pending resolution of the summary judgment motions.

summary judgment, and remand for a further determination on an essential factual issue.

In June of 1970 Mr. and Mrs. Calvin Bissette signed an agreement to purchase a house from the Ardon Corporation, contingent on procurement of adequate financing. On 9 September 1970 they met with an officer of Colonial Mortgage for the purpose of discussing the necessary loan. At that time they filled out an application for FHA insurance. On 23 November 1970 Colonial Mortgage notified the Bissettes that FHA had issued a firm commitment to insure suitable financing. Whether at that time Colonial Mortgage *committed itself* to issue the loan is hotly debated, and was not resolved by the District Court's disposition of the case. After entering into a pre-possession agreement *with Ardon,* the Bissettes moved into the house on 2 December 1970. Finally, on 23 December 1970, "closing" or final settlement took place. At that time full Truth in Lending Act disclosures were made and the mortgage instruments were executed.

■ Assuming, as we must, that no contractual relationship arose between the Bissettes and Colonial Mortgage prior to closing, there was no violation of the Act's requirements as to timing of disclosure. The Truth in Lending Act, at 15 U.S.C. § 1639(b), provides:

> Except as otherwise provided in this part, the disclosures required by subsection (a) of this section shall be made *before the credit is extended,* and may be made by disclosing the information *in the note* or other evidence of indebtedness to be *signed by the obligor.* [Emphasis added.]

Any lingering ambiguity in the statute is eliminated by the relevant regulations, promulgated by the Federal Reserve Board under its authority to interpret and implement the Act. Regulation Z clearly set forth the requirement that disclosure must be made "before the transaction is consummated." 12 C.F.R. 226.8(a). Section 226.2(cc) further clarifies the timing requirement:

> The transaction shall be considered consummated at the time a contractual relationship is created between a creditor and a customer irrespective of the time of performance of either party.

Finally, Federal Reserve Board Public Information Letters, which may not be legally binding but should be treated as persuasive, incorporated this view and stated that the time of consummation or contract should be analyzed on the basis of local law.

■■ The District Court passed by the plain import of the statute and regulations, went instead to what it considered the overall legislative purpose, devised its own implementing rules as to how to carry out that purpose (this Congress and the Board had already done), and found a violation because the legislative purpose of allowing comparison shopping for credit would be frustrated if disclosure was not made prior to closing.[2] The Bissettes seek to support this approach by arguing that this "re-

2. 15 U.S.C. § 1601 of the Act states that it is the "purpose of this subchapter to assure a *meaningful* disclosure of credit terms *so that* the customer will be able to *compare more readily* the various credit terms available to him and avoid the uninformed use of credit." (Emphasis added.) Plaintiffs argue that disclosure is not "meaningful" unless it occurs at a time when comparison shopping for credit is still possible for the consumer as a practical matter. They have chosen an interpretation of "meaningful" which connotes effectiveness of result. As a purely linguistic matter, the word "meaningful" appears, more precisely, to connote effectiveness of communication—especially since a prime statutory goal was to eliminate the confusion generated by numbers which, because based on different computations, could not be easily juxtaposed to judge their relative desirability. However, since the general section setting forth legislative goals neither constitutes an operative section of the statute nor prevails over the specific provisions, as clarified by regulations, we refrain from the pursuit of a metaphysical analysis of the "meaning" of "meaning."

medial" Act should be liberally construed.[3] However, "liberal construction" and interpretation based on legislative purpose can only go so far. Where the meaning of the statute and regulations is clear, a contrary reading would become *destruction* of the statutory scheme, as administered by the Board.

The statute and regulations provided a clear and discernible line by which lenders could measure the time of required compliance—certainly a welcome instance of clarity in the midst of otherwise complex and difficult provisions. In essence, the Bissettes urge that the borrower's inability, as a practical matter, to shop around should trigger the lender's disclosure obligation. If that were the case, the time for compliance would not only be uncertain but different in every case. Furthermore, a home buyer can insist on a clear prior contractual commitment from the lender. Since that would elicit disclosure in precisely those cases where the consumer desired to stop shopping and took steps to solidify the deal, the applicable regulation *does not,* contrary to the District Court's assumption, *inevitably* lead to the frustration of the statute's purpose.

We of course agree that it would be preferable, from the consumer's vantage point, to require disclosure well before the final formalities. Indeed, the Federal Reserve Board now apparently shares that view. On 27 July 1972 the Board proposed an amendment to Regulation Z which would require disclosure to home buyers "not less than 10 business days before the date on which the customer executes the note or other evidence of debt." Of course, the very necessity for a proposed "amendment" implies that the Board feels no disclosure

is required prior to the date of closing (or an earlier contract) under current law. As the press release announcing the proposed amendment shows by its own description of current practice, affected creditors uniformly accepted the plain meaning of the applicable regulations. While urging earlier disclosure, the Board nowhere indicated that this industry practice constituted a violation of the provisions currently in effect.

We hasten to note that our holding in this case would not operate to invalidate the proposed amendment, should it be promulgated. The Board has broad power to implement the Act, power delegated to it by a Congress which was uncertain as to the refinements potentially required to implement successfully its novel statutory scheme. 15 U.S.C. § 1604 provides that

> The Board shall prescribe regulations to carry out the *purposes* of this subchapter. These regulations may contain such . . . provisions . . . as in the judgment of the Board are necessary or proper to effectuate the *purposes* of this subchapter . . . . [Emphasis added.]

It should be noted that the Board's solution, unlike that of the District Court, cures the major objection to the Bissettes' suggested reading of the statute —since the 10-day requirement would provide a clear and ascertainable measurement of the time for compliance.[4] The fact that the Board might prospectively alleviate the chaos caused by the District Court's decision lends little support to the court's conclusion, for the resulting uncertainty was very real to Colonial Mortgage in the context of this transaction. In short, the Federal Reserve Board is empowered within limits to change its regulations and amplify

---

3. See Gardner & North Roofing & Siding Corp. v. Board of Governors of Federal Reserve System, 150 U.S.App.D.C. 329, 464 F.2d 838 (1972).

4. Colonial Mortgage protested that any disclosure requirement before closing would be impossible to meet because the actual terms of credit would not be settled until

that time. Although we are not faced with that issue here, an absence of absolute certainty on terms appears to pose no insurmountable problems because approximations are allowable where exact amounts are unavailable at the time disclosures must be made. See 12 C.F.R. § 226.6(f).

the Act; but the District Court could not properly ignore the law applicable to these parties as it plainly stood when this case arose.

■ We hold that the applicable and binding regulations merely required disclosure at any time prior to the existence of a contractual relationship between borrower and lender. Since the District Court made no finding on the essential issue of when such a contract arose, we must remand for that determination and for further proceedings consistent with this opinion.

Reversed and remanded.