Daniel C. and Celia J. FOSTER et al.,
Plaintiffs,

v.

MARYLAND STATE SAVINGS
& LOAN ASSOCIATION,
Defendant.

Civ. A. No. 76–73.

United States District Court,
District of Columbia.

Jan. 10, 1974.

Benny L. Kass, William A. Dobrovir, John Graybeal, Washington, D. C., for plaintiffs.

John P. Arness, John J. Ross, Peter W. Tredick, Washington, D. C., for defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

This case is before the Court on Cross-Motions for Partial Summary Judgment involving a complaint against the Defendant, Savings and Loan Association, alleging six (6) causes of action. While there is a seventh claim alleged against the defendant allegedly arising under the federal antitrust laws, this was severed by Order of the Court dated November 29, 1973, with the proviso that discovery respecting same would be completed by the parties within ninety (90) days from said date and that the Court would defer ruling on the question of whether this was a proper class action until after this Opinion and Order regarding the pending Motions for Partial Summary Judgment.

## THE FACTS

The material facts with respect to the named Plaintiffs herein are undisputed and appear as follows:

The Plaintiffs, Mr. and Mrs. Foster, borrowed some $35,600.00 from the Defendant on May 22, 1972, which was secured by a note and first deed of trust lien in the same amount on their home at 1310 Pickering Circle, Largo, Maryland. Prior to the time the Fosters executed the aforesaid note and deed of trust and *prior* to the time of the making of the loan in the case at bar, the Plaintiffs were supplied Federal Truth in Lending Disclosure Statements. On May 18, 1972, the Defendant sent to Plaintiffs' attorney a letter marked Exhibit G to Plaintiffs' Cross Motion for Summary Judgment stating, *inter alia* its instructions for closing the subject loan and this included but was not limited to compliance with the Federal Truth in Lending Act, i.e., Notice and Completion of the Federal Truth in Lending Disclosure Statement. At the closing of the loan on May 22, 1972 but before the execution of the note and first deed of trust the Plaintiffs executed the following document:

"NOTICE

YOU MAY HAVE A RIGHT TO AT LEAST TEN (10) DAYS OPPORTUNITY TO USE THE DISCLOSURE STATEMENT TODAY SUPPLIED TO YOU FOR COMPARATIVE PURPOSES. SHOULD YOU ELECT TO DO SO THE LOAN COMMITMENT OF MARYLAND STATE SAVINGS AND LOAN ASSOCIATION WILL BE APPROPRIATELY EXTENDED.

We have been informed that pursuant to a recent Federal Court decision the Federal Truth in Lending Disclosure Statement should be supplied to the borrower(s) in sufficient time to make a meaningful comparison with other lenders' charges. Notwithstanding this right, we desire to consummate our loan this date, waiving any claim against Maryland State Savings and Loan Association for not having earlier supplied the disclosure statement.

/s/ Daniel C. Foster
DANIEL C. FOSTER
/s/ Ceclia J. Foster
CELIA J. FOSTER

Date:

May 22, 1972."

The terms of the Foster loan required the pre-payment of principal, interest, taxes and insurance. The monthly payment for 1/12 of the annual taxes and insurance were "escrowed" by the Defendant and held according to that method of accounting instead of the "capitalization" method. However, there was nothing in any of the loan documents or law to prevent or prohibit this practice.

In addition to the above, the Fosters selected their own settlement attorney to close the loan in accordance with their request. Because of this, the lender used, as it does in all cases, where its own counsel does not close the loan, and for its protection and that of its members, its own counsel to prepare the note and deed of trust and review all of the other documents including but not limited to the land title insurance binder, settlement sheets, house location survey, and the land title insurance policy, as well as the fire and extended coverage insurance policy and any easements of record, etc., all at a cost to the Plaintiff borrower of $100, which was reasonable and not contrary to any law.

The Plaintiffs, Mr. and Mrs. Johnson, borrowed $38,300.00 from the Defendant on January 14, 1972, which was secured by a note and first deed of trust lien in the same amount on their home at 8910 Bluffwood Lane, Oxon Hill, Maryland. Like the Foster loan, these Plaintiffs prior to the execution of the aforesaid loan papers and *prior* to the time of the making of the loan in the instant case, were supplied Federal Truth-in-Lending Disclosure Statements.

On January 12, 1972 Plaintiffs' own counsel was furnished a letter marked Exhibit F to their Motion for Partial Summary Judgment stating, *inter alia*, its instructions for closing the subject loan and this included but was not limited to compliance with the Federal Truth in Lending Act. It is noted that Plaintiffs' Exhibit F required Plaintiffs' counsel to comply with the Truth in Lending Act and in particular item No. 4 therein; and the Court assumes Plaintiffs' counsel did this because of the Defendant lender's specific instructions before the making of and the closing of subject loan. If the same was not done by Plaintiffs' counsel, the fault must be imputed to the Plaintiffs themselves and their remedy, if any, does not lie against the Defendant under the facts here present.

The other terms of the Johnson loan were basically the same as the Foster loan with respect to the escrow method of accounting for pre-payment of taxes and insurance and, as in the Foster case, the payment of the $100.00 counsel fees to the lender's counsel was justified and not prohibited by law for the same reasons as already noted. In addition, it is as much for the protection of the borrower as it is to the lender as the file indicates. See Answers of Defendant to Interrogatories 17, 18 and 19 and Answers of Mr. T. Hammond Welsh, Jr. on oral deposition herein at pages 43; 45–46; 53–54.

In neither case did the Defendant require the Plaintiff borrowers to use the lender's attorney nor did the Defendant receive any profit from same and the file reflects nothing to the contrary. The reason for this practice has been discussed before in this Opinion and will not be repeated again here.

### JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1337 and 15 U.S.C. Sections 15, 26 and 1640.

### POINT ONE

*The Federal Truth-in-Lending Act is Satisfied If, As Was the Case Here, the Disclosures Were Made Before the Execution of the Papers Securing the Loan On Real Property.*

■■ The undisputed record herein discloses that the Plaintiffs received the specified disclosures required by the Federal Truth-in-Lending Act *before* the two loans were made, i.e., *before* the actual execution of the two notes secured by the first Deeds of Trust in this case. This is all that is required. See Bissette v. Colonial Mortgage Corporation, 155 U.S.App.D.C. 360, 477 F.2d 1245 (1973); Stavrides v. Mellon National Bank and Trust Company, 353 F.Supp. 1072 (W.D.Pa.1973). Moreover, the Defendant did exactly what Section 1639(b) of the Act contemplates, namely, require Plaintiffs to acknowledge the required disclosures "in the note or other evidence of indebtedness to be signed" by the borrowers. Furthermore, the facts here show that the Plaintiffs received the required disclosures *before* each of them executed the notes and deeds of trust which is exactly what section 1639(b) requires and contemplates. Accordingly, the Defendants' Motion for Partial Summary Judgment as to the first cause of action will be granted and Plaintiffs' Motion will be denied.

### POINT TWO

*The Plaintiffs Concede That $35.00 of the $100.00 Charged By Defendant For Preparation of the Notes and Deeds of Trust Need Not Be Disclosed by the Truth-in-Lending Act and This Is Correct. Moreover, the $65.00 Balance Is Not a "Prepaid Finance Charge" and Thus No Disclosure Is Required As to This Under the Statute.*

■ The Plaintiffs' Memorandum (page 8) concedes that $35.00 of the $100.00 charged by the Defendant for preparation of the Notes and Deeds of

Trust is proper under the law but attempt to classify the remainder of the $100.00 (or $65.00) as a "prepaid finance charge." This is erroneous. See 15 U.S.C. § 1605(e)(1) and (2). See also Regulation Z of the Federal Reserve Board which is charged with administering and implementing the Truth-in-Lending Act through regulation. It provides in appropriate part that certain charges in connection with any real property transaction shall not be included in the finance charge with respect to the transaction:

"(1) Fees or premiums for title examination, [abstract of title,] title insurance, *or similar purposes* [and for required related property surveys.]

"(2) Fees for preparation of deeds, settlement statements, or other documents." (Italics for emphasis added)

There can be no dispute, based upon this record, and anyone experienced in the Real Estate Title field that the $65.00 charge here involved is not within the Act's definition of a "finance charge" because it is not imposed by the lender "as an incident to an extension of credit" within the meaning of 15 U.S.C. § 1605. Moreover, this fee is as much for the protection of the borrower as it is the lender. Also, all commercial lending institutions known to this Court universally require their borrowers to pay for the lender's counsel fees and this is an accepted and proper practice in the industry. In fact, the borrowers, in electing to have their own title attorney, forfeited the right to complain about this and could have thus avoided the same by having the lender's attorneys conduct the settlement and all that precedes and follows the closing of the loans. This, according to well-known practice could be acquired for no more than $50.00 at the most as this Court in its days of practicing law in this area well remembers. In any event, it is clear that the words "or similar purposes" in Regulation Z means exactly what it says in so many words, namely, that the $65.00 was to insure that the

borrower got a marketable title to their home and it cannot be disputed that this is as much for the benefit of borrower (Plaintiffs) as it is the Defendant lender in this or any other case. Courts don't live in a vacuum and it is a well-known fact that in recent years there has been far too many people swindled by unscrupulous attorneys who were either dishonest or incompetent in the title field. The practice of this Defendant now complained of, on the basis of a mere technicality, without merit, would have prevented or minimized the thousands of dollars which have been lost by homeowners in this area and the practice should be encouraged rather than discouraged, particularly where, as here, both parties are benefited and no violation of law or regulation is encountered.

## POINT THREE

*The Truth-In-Lending Act DOES NOT REQUIRE Disclosure That Pre-Payment of Taxes and Insurance Premiums in Advance Will Not Bear Interest Nor Is the Exclusion of This an Understatement of the Annual Percentage Rate; Moreover, Periodic Statements Need Not Include in Its Computation of Any Funds Held in Escrow for Future Payments of Real Estate Taxes or Insurance Premiums.*

It is well-settled that the Truth-in-Lending Act specifically exempts funds held in escrow resulting from the pre-payment of Real Estate Taxes and Fire and Extended Coverage Insurance Premiums from the annual percentage rate of the finance charge. This is true because Regulation Z specifically excludes these transactions from the purview of the Act. An examination of 15 U.S.C. § 1605(a) and § 1605(e)(3) will show this. As this Court said in Graybeal et al. v. American Savings and Loan Association, D.C., 59 F.R.D. 7, 1973:

"since escrows are specifically excluded from computation of the finance charge, and since the finance charge

provides the basis for determining the annual percentage rate, Congress *could not* have meant for escrows to be included in the annual percentage rate. To conclude otherwise is not only logically unsound but mathematically incorrect in view of the inter-dependent relationship of the finance charge and the annual percentage rate under the Act."

The legislative history of the Act (H. R.Rep.No.1040, 90th Cong. 2d Sess. (1967); 1968 U.S.Code Congressional and Administrative News at page 1971) and section 226.4 of Regulation Z. 12 C.F.R. 226 supports the inescapable conclusion that the claim here in the third cause of action is not in violation of the Act or Regulation Z. Moreover, there is a strong public policy which favors the practice of collecting in advance real estate taxes and insurance premiums. It extends to the borrower a useful and desirable service, much in the same manner that the Federal and state governments "withhold" taxes to insure that funds are available when the taxes become due. Defendants should not necessarily be expected to perform this service *gratis.* That they did so in the past does not render discontinuance unconscionable. Whether they do so in the future will be determined by the Federal Home Loan Bank Board and the competitive forces of the market place. For the above reasons the Plaintiffs have failed to state a claim upon which relief may be granted, and, therefore, the Defendants' Motion for Summary Judgment will be granted as to the Third and Fourth causes of action under the Act, and, the Plaintiffs' Cross Motion for the same relief will be denied. See Stravides v. Mellon National Bank and Trust Company, 353 F.Supp. 1072 (W.D.Pa. 1973) and Williams v. American Savings and Loan Association, C.A. 3–6350–D (N.D.Tex. decided March 26, 1973).

An Order will be entered of even date herewith consistent with this Opinion granting the relief prayed for by the Defendant as to the first four (4) claims alleged.