**E. Dale FENTON and Wanda Fenton, Plaintiffs,**

v.

**CITIZENS SAVINGS ASSOCIA- TION, Defendant.**

**No. 73 CV 149–C.**

United States District Court, C. D. Missouri, W. D.

Aug. 19, 1975.

A. Howard Chamberlin, Shafer & Chamberlin, Kansas City, Mo., for plaintiffs.

Martin J. Purcell, P. John Owen, Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, Mo., for defendant.

FINDINGS, OPINION AND ORDER

ELMO B. HUNTER, District Judge.

This is an action brought on November 8, 1973, in which plaintiffs, E. Dale Fenton and Wanda Fenton charge defendant, Citizens Savings Association (Citizens) with having violated certain provisions of the Truth In Lending Act, 15 U.S.C. § 1601 et seq. and Regulation Z issued pursuant thereto by the Board of Governors of the Federal Reserve System.[1] Plaintiffs seek damages and reasonable attorney fees.

The defendant, Citizens, denies having violated the Act and Regulation Z, and asserts that if there ever existed any cause of action it is barred by the one year limitation period provided in the Act. Other defenses are also raised, including the lack of subject matter jurisdiction.

After substantial discovery, the parties have stipulated for the purposes of this case to the following facts concerning the alleged violation.

The Fentons are citizens of the state of Missouri, residing in Columbia, Missouri. Citizens is a corporation existing under the laws of the state of Missouri and is engaged in the business of providing financial services, principally as a savings association for its account holders and as a lending institution for various borrowers. Citizens has its principal place of business in Mexico, Missouri, and maintains a permanent branch office in Columbia, Missouri.

Prior to May 21, 1970, the Fentons applied to Citizens for a loan to finance construction of a single family residence of occupancy by the Fentons.

On May 21, 1970, the Fentons and Citizens contracted for the extension of credit by the execution of a note secured by a Deed of Trust. The written contract (note) showed the amount as $44,000.00 "for money loaned with interest from date at the rate of 8.0 per cent

1. 12 C.F.R. § 226.

per annum, payable in 240 successive equal monthly installments in the amount of $368.10 each, with the first payment becoming due and payable on the 1st day of July, 1970, and a like payment becoming due and payable on the same day of each and every month thereafter until the 1st day of June 1990 on which date the remaining balance of principal and interest shall be due and payable." The Deed of Trust stated it was to secure the note "executed by E. Dale Fenton and Wanda Sue Fenton, husband and wife, in the principal sum of $44,000.00 . . . ."

Also, on May 21, 1970, the Fentons and Citizens executed an agreement providing for the administration of a $4,000 compensating balance in connection with Citizens' loan to them. On May 21, 1970, the Fentons acknowledged their receipt on that date of a Loan Settlement Statement. That statement, among other things, showed the loan amount as $44,000.00, rate of interest as 8%, each monthly payment as $469.00 beginning July 1, 1970 for 240 months (20 years). It showed the breakdown as: Monthly principal and interest payment—$368.10; C. & I. premium—$9.25; Monthly tax—$70.00; and Insurance payment—$20.75 for a total payment of $469.00. It also showed loan disbursements of $4,000.00 as a required deposit balance, and some other small fees. And finally it showed, "the annual percentage rate on this transaction is 10.07%."

On May 21, 1970, the Fentons acknowledged their receipt on that date of Notice pursuant to Federal Reserve Board Regulation Z, 12 C.F.R., § 226 of their right to cancel the transaction within three business days of May 21, 1970.

By the terms of their loan agreement with Citizens, the Fentons were to commence making monthly payments on July 1, 1970, of the following amounts:

| | | |
|---|---|---|
| (a) Principal and interest | | $368.10 |
| (b) Mortgage insurance premium | | $ 9.25 |
| (c) Monthly tax | | $ 70.90 |
| (d) Insurance payment | | $ 20.75 |
| Total | | $469.00 |

Citizens charge a four percent (4%) "late fee" for any installment payment not received within fifteen (15) days of the due date for that installment; this charge is disclosed in numbered paragraph "1" on page 2 of the Deed of Trust, and in the Notice given the Fentons pursuant to Federal Reserve Board Regulation Z, 12 C.F.R. § 226.

Citizens disclosed its pre-payment formula under the heading "privilege to Pre-Pay" in the Note Secured by Deed of Trust signed by the Fentons, and in the Notice given to the Fentons pursuant to Federal Reserve Board Regulation Z, 12 C.F.R. § 226.

Citizens disclosed the annual percentage rate in the Notice given to the Fentons pursuant to Federal Reserve Board Regulation Z, 12 C.F.R. § 226.

Citizens disclosed the amount financed by the loan transaction in the Notice given to the Fentons pursuant to Federal Reserve Board Regulation Z, 12 C.F.R. § 226.

Citizens disclosed the prepaid finance charges to the Fentons in the Notice given them pursuant to Federal Reserve Board Regulation Z, 12 C.F.R. § 226.

Citizens disclosed the total number of payments scheduled to repay the Fentons' indebtedness in the Notice given to the Fentons pursuant to Federal Reserve Board Regulation Z, 12 C.F.R. § 226.

Citizens monthly sent to the Fentons a Notice of Payment Due; this Notice was mailed on approximately the twenty-fifth day of each month giving notice for payment due on the first day of the next following month, and in the year preceding the commencement of this action, Citizens sent eight such monthly statements to the Fentons.

Whenever the Fentons' loan payment was not received by the fifteenth day of the month, Citizens mailed a Delinquency Notice.

A loan of $44,000.00 payable in 240 monthly payments of $368.10 each (combined principal and interest) reflects a rate of interest of 8.00000%.[2]

A loan of $40,000.00 payable in 240 monthly payments of $368.10 each (combined principal and interest) reflects a rate of interest of 9.31750%.

If plaintiffs prevail in this action, their damages are computed pursuant to 15 U.S.C. § 1640; plaintiffs may also receive their reasonable attorneys' fees and costs of this action.

If Citizens prevail in this action, the Fentons shall not receive any sum in damages.

### Other Facts

Eventually, and as a result of plaintiffs' defaults in payments due, Citizens foreclosed. Thereafter, plaintiffs brought this suit.

### The Truth In Lending Act—Its Purpose

■ Congress stated the purpose of the Truth In Lending Act to be, "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S. C. § 1601. In order to assure meaningful credit comparison the Truth In Lending Act and Regulation Z established a uniform method for setting out and determining the finance charge so that a consumer can comparison shop before committing himself to a loan, by looking at a single statement showing the annual percentage rate. *Buford v. American Finance Co.,* N.D.Ga.1971, 333 F.Supp. 1243; *Ratner v. Chemical Bank of New York Trust Co.,* S.D.N.Y.1971,

329 F.Supp. 270; *W. T. Grant & Co., v. C. I. R.,* C.A.2nd, 1973, 483 F.2d 1115. The obligation of the lendor under the Truth In Lending Act is to properly disclose, and this law does not concern itself with the subsequent performance. *See, Burgess v. Charlottesville Savings and Loan Ass'n,* C.A.4th, 1973, 477 F.2d 40; *Bostwick v. Cohen,* N.D.Ohio 1970, 319 F.Supp. 875.

### The Finance Charge

Section 1605 of the Truth In Lending Act[3] provides in part that the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit, "including any of the following types of charges which are applicable: (1) Interest, time price differential, and any amount payable under a point, discount, or other system of additional charges. (2) Service or carrying charge. (3) Loan fee, finder's fee or similar charge. (4) Fee for an investigation or credit report. (5) Premium or other charge for any guarantee or insurance protecting the creditor against the obligor's default or other credit loss." Other portions of § 1605 indicate additional items that are to be considered a part of the finance charge and certain items that are exempted from computation of the finance charge.

Section 1606 specifically states how the annual percentage rate shall be computed. And § 1631 requires that each creditor shall disclose clearly and conspicuously, in accordance with the regulation of the Board of the Federal Reserve System (Board) to whom consumer credit is extended and upon whom a finance charge is or may be imposed the information required by the Act. The

---

2. The "annual percentage rate" as defined by the Truth in Lending Act may be different from the rate of interest on a loan. The annual percentage rate is based on the fi-

nance charge involved, and the finance charge embodies more costs than a mere interest rate.

3. 15 U.S.C.A. § 1605.

Board is authorized by regulation to implement this requirement and has done so in its Regulation Z.[4]

Section 1640(a) sets out the civil liability of violators of the disclosure requirements as follows:

"Except as otherwise provided in this section, any creditor who fails in connection with any consumer credit transaction to disclose to any person any information required under this part to be disclosed to that person is liable to that person in an amount equal to the sum of

"(1) twice the amount of the finance charge in connection with the transaction, except that the liability under this paragraph shall not be less than $100 nor greater than $1,000; and

"(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with a reasonable attorney's fee as determined by the court."

*The Limitation Provision*

Section 1640(e) provides:

*"Jurisdiction of courts"*

"(e) Any action under this section, may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." (Emphasis added.)

*Jurisdiction and Time-Barring Questions*

The threshold question to be determined is whether plaintiffs asserted cause of action is eliminated by the one year requirement of § 1640(e). The undersigned Court is convinced that it is and that this case must be dismissed both as being time-barred and for want of subject matter jurisdiction.

■ As earlier stated, the purpose of the Truth In Lending Act is to assure those seeking credit certain information so that they can know just what the annual percentage rate is and can engage in meaningful credit comparisons before obligating themselves. The "violation" contemplated by § 1640(e) is a failure by the creditor to disclose the required information "in connection with any consumer credit transaction". The transaction involved under the undisputed facts is the May 21, 1970 credit transaction between Citizens and plaintiffs, evidenced by the Note and the Mortgage of the same date. One of the documents exchanged on that date was the Notice given to plaintiffs by Citizens pursuant to the requirements of the Federal Reserve Board Regulation Z. Examination of that Notice reveals the efforts of Citizens to correctly provide all the credit information required by the Truth In Lending Act and by Regulation Z. However, it is plaintiffs' contention that the Notice incorrectly stated the annual percentage rate by substantially understating it; that the loan made was only a $40,000.00 loan, and that the $4,000.00 "compensating balance" constituted a hidden or additional finance charge. Plaintiffs also suggest other inaccuracies in that Notice.

It is not necessary to determine whether Citizens' effort in its Notice to comply with the requirements of the Truth In Lending Act and Regulation Z resulted in an incorrect statement of the annual percentage rate or in other inaccuracies, for even if there was a failure to properly comply with the disclosure requirements of that Act and Regulation Z, § 1640(e) makes it clear that the asserted cause of action is time-barred and, hence, that plaintiffs' asserted claim must be dismissed.

■ There is also reason to conclude that the District Court lacks subject matter jurisdiction over the alleged violation which occurred more than one year prior to the bringing of the action in the District Court. The violation plaintiffs assert, if indeed under the evidence adduced it is a violation, occurred

4. Part 226 of Title 12, Code of Federal Regulations.

May 21, 1970, more than three years and five months before plaintiffs filed their complaint in this suit on November 8, 1973. The late filing of the complaint results in not merely a time-barring in the nature of that proscribed in a statute of limitations.[5] Rather, where the time-barring provision is a part of the very statute that creates the cause of action not existing at common law, and where it is the clear intent of Congress as shown in the statute that the bringing of the action within the time period is a condition of establishing jurisdiction, the failure to assert the cause of action by bringing suit within that time period results in the District Court not having jurisdiction over the subject matter.[6]

The plaintiffs seek to avoid their jurisdictional infirmity by asserting (1) that each Notice of Payment Due had the effect of bringing forward the May 21, 1970 credit transaction to the date of the Notice of Payment Due (a continuing violation) and (2) that each Notice of Payment Due failed to contain all the information required by the Truth in Lending Act and Regulation Z so that each such Notice of Payment Due was a separate violation of the Truth In Lending Act and Regulation Z. Plaintiffs quote that part of the Truth In Lending Act, 15 U.S.C. § 1640(a) reading, ". . . any creditor who fails in connection with any consumer credit *transaction to disclose* . . . information required under this part . . . is liable" (plaintiffs' emphasis), and argue that each Notice of Payment Due is a separate transaction in which Citizens has violated the Act and Regulation Z, or in any event, is a continuing violation thereof. Plaintiffs note that Regulation Z at § 226.8(n) provides that if a creditor transmits a periodic billing statement other than a delinquency notice, it shall set forth the annual percentage rate.[7]

### Continuing Violation Contention

Turning first to the continuing violation contention, it is noteworthy that in closed-end installment credit transactions three courts have rejected its applicability to subsection 1640(e) [8] of the Truth In Lending Act. In *Wachtel v. West*, 476 F.2d 1062 (6th Cir. 1974), cert. denied, 414 U.S. 874, 94 S.Ct. 161, 38 L.Ed.2d 114 (1973), in rejecting this type of contention the Circuit Court of Appeals stated, ". . . a credit transaction which requires disclosures under the Act is completed when the lender and borrower contract for the extension of credit." In *Stevens v. Rock*

---

**5.** Even if the provisions of 15 U.S.C.A., § 1640(e) are treated merely as a statute of limitations, the result must be a dismissal of plaintiffs' case. See *Chevalier v. Baird Savings Association*, 371 F.Supp. 1282 (E.D.Pa. 1974); *Adema v. Great Northern Development Co.*, 374 F.Supp. 318 (N.D.Ga.1973); *Munn v. American General Investment Corp.*, 364 F.Supp. 110 (S.D.Texas 1973), and *Reyes v. Carver Federal Savings & Loan Assoc.*, 74 Misc.2d 323, 344 N.Y.S.2d 501 (S.Ct.1973).

**6.** Statutes of Limitations are distinguished from statutes which create a right of action not existing at common law and restrict the time within which action may be brought to enforce the right. A true statute of limitations extinguishes only the right to enforce the remedy and not the substantive right itself. The limitation of time for commencing an action under a statute creating a new right enters into and becomes a part of the right of action itself and is a limitation not only on the remedy but of the right also. The right to recover depends upon the commencement of the action within the time limit set by the statute, and if that period of time is allowed to elapse without the institution of the action, the right of action is gone forever. See 51 Am.Jur.2d, Limitation of Actions, § 15, pp. 599–600 and authorities therein cited.

**7.** "Periodic statement" is defined in Regulation Z as "any statement, notice or reminder of payment due on any transaction payable in installments which is mailed or delivered periodically to the customer in advance of the due date of the installment . . . ."

**8.** Entirely different provisions are established for open-end consumer credit plans. See, 15 U.S.C. § 1637(b) (Supp. V); *Ratner v. Chemical Bank New York Trust Company*, 329 F.Supp. 270 (S.D.N.Y.1971).

*Springs National Bank,* 497 F.2d 307 (10th Cir. 1974), the Court held that a violation of the disclosure requirements occurs when the parties contract for credit. And in *Kristiansen v. John Mullins & Sons, Inc.,* 59 F.R.D. 99 (E.D.N.Y. 1973), the Court held the alleged violation occurred "upon the execution of the contract" and not at any later time. The clear thrust of these decisions is that where the lendor has the affirmative duty to make certain disclosures before credit is extended, the violation occurs when the credit is extended without the required disclosure having been made.

■ The rationale of the above cited cases appears to be both sound and practical. Acceptance of a continuing violation theory would permit an action to be brought at any time within one year after the last monthly installment payment was made. Applied to a 20 year installment loan for the purchase of real estate it would be possible to sue successfully approximately 21 years after the execution of the loan contract. Such an interpretation appears unreasonable, and not in accordance with the spirit and intendment of Congress as expressed in the language of subsection 1640(e). It is not to be presumed that Congress intended unreasonable interpretations of its jurisdictional one year time limitation period specifically provided in § 1640(e). Cf. *Arrington v. Sam Penix Garage,* 212 Ark. 418, 206 S.W.2d 757 (Ark.1947); *Woods v. Stone,* 333 U.S. 472, 68 S.Ct. 624, 92 L.Ed. 815 (1948).

Turning to Regulation Z, 12 C.F.R. § 226.8(n), it provides in part that:

"If a creditor transmits a periodic billing statement other than a delinquency notice . . ., it shall be in a form which the customer may retain and shall set forth

"(1) the annual percentage rate or rates; and

"(2) the date by which, or the period, if any, within which payment must be made in order to avoid late payment or delinquency charges."

■ The above are the only disclosures required in a periodic billing statement. Each Notice of Payment Due (and each delinquency notice) disclosed both the annual percentage rate and the period within which payment should have been made in order to avoid late payment or delinquency charges. Thus, each Notice of Payment Due provided all the disclosures required by Regulation Z.[9]

■ Since the plaintiffs assert Citizens is guilty of violating the Truth In Lending Act and Regulation Z by repeating in each Notice of Payment Due the allegedly incorrect annual percentage rate contained in the May 21, 1970 Notice, the question remains as to whether in a closed-end credit transaction such as this, each Notice of Payment Due containing a statement of the same annual percentage rate as contained in the original Notice of May 21, 1970, was a separate transaction that could be the basis of a new or separate violation of either the Act or Regulation Z for failure to state the correct annual percentage rate. It is the Court's conclusion that it could not. First, it must be emphasized that here we are not dealing with an open-end credit account where additional transactions can occur as new credits are engaged in, involving periodic billing statements in which a new and different finance charge is being imposed. What we are dealing with is a closed-end single extension of credit (a single consumer credit transaction), involving a single, unchanging finance charge, and a single, unchanging credit

9. Each delinquency notice also provided the same disclosures although Regulation Z did not require Citizens to state them in a delinquency notice. Since delinquency notices are exempted in § 226.8(n) of Regulation Z from the above noted disclosure requirements of a periodic billing statement, no violation results if such disclosures are not contained in the delinquency notices.

term situation. Citizens apparently was under a duty to disclose in each of its periodic billing statements the same "Annual percentage rate" as was disclosed in its Regulation Z Notice on May 21, 1970, and it did so.[10] There were no new or revised disclosures from one periodic billing statement to the next other than the due date of the particular installment payment. Thus, the billing statement (Notice of Payment Due) served simply as a reminder to plaintiffs as to what the annual percentage rate was, and when the payment was due to avoid a late payment charge.[11] Hence, the conclusion is inescapable that there was nothing contained in the Notice of Payment Due (periodic billing statement) that would serve as the basis for characterizing each such statement as a separate transaction that could be the basis for a violation of the Act or Regulation Z.[12] Hence, the six Notices of Payment Due that were sent by defendant to plaintiffs within one year of the commencement of this suit do not provide the basis for a cause of action.

### Conclusion

In accordance with the findings and reasons above set out, that part of the cause of action plaintiffs seek to assert concerning the May 21, 1970 credit transaction and Notice, and all notices of Payment Due sent more than one year prior to the bringing of this suit is barred by § 1640(e) and this Court lacks subject matter jurisdiction over such asserted matters. As to that part

of the asserted cause of action involving the six Notices of Payment Due that were sent to plaintiffs by defendant within the one year prior to the filing of this suit, plaintiffs have failed to state a cause of action.

Accordingly, this case is hereby dismissed.

It is so ordered.

---

10. See Federal Reserve Bank Letter from Director, Frederick Solomon, July 25, 1969, 1969–1974 Transfer Binder, C.C.H. Consumer Credit Guide, Section 30, 116 at 66,048.

11. As earlier noted, entirely different provisions are established for open-end consumer credit transactions. See, 15 U.S.C. § 1637(b) (Supp. V); *Ratner v. Chemical Bank New York Trust Co.*, 329 F.Supp. 270 (S.D.N.Y.) 1971.

A different result might obtain if defendant failed to state the annual percentage rate as originally computed and stated in its original notice, or if it made no disclosure of annual

percentage rate in its Notice of Payment Due. The Court expresses no opinion on either of these events as they are not before the Court in this case.

12. In numerous prior actions under the Truth in Lending Act the courts consistently have allowed only a single award of statutory damages where several disclosure violations have been committed with respect to a single consumer credit transaction that was not time-barred. See, for example, *Eby v. Reb Realty, Inc.*, 495 F.2d 646 (9th Cir. 1974) and *Palmer v. Wilson*, 359 F.Supp. 1099 (N.D.Cal.1973) and cases cited therein.