Vonsella HARVEY

v.

**HOUSING DEVELOPMENT CORPORA-
TION AND INFORMATION CENTER.**

No. 76CV314–W–3.

United States District Court,
W. D. Missouri, W. D.

April 28, 1978.

Richard F. Halliburton, Legal Aid & Defender Society, Kansas City, Mo., for plaintiff.

James M. Ramsey, Kansas City, Mo., for defendant.

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

RUSSELL G. CLARK, District Judge.

This is an action filed on June 2, 1976 in which plaintiff, Vonsella Harvey, charges defendant, Housing Development Corporation and Information Center, with having violated certain provisions of the Truth In Lending Act, 15 U.S.C. § 1601 et seq. and Regulation Z as promulgated by the Board of Governors of the Federal Reserve System.

Plaintiff seeks recission, damages, costs and reasonable attorney fees.

In a separate count plaintiff sought the same relief on the theory of false representations made by defendant's agents and on their breach of a fiduciary duty owed to plaintiff. Upon filing a motion for summary judgment, plaintiff expressly abandoned her alleged cause of action on this theory.

The parties have jointly executed and filed a Standard Pretrial Order No. 2 in which all material facts and all issues of law have been stipulated by the parties. A review of the stipulations reveals that there is no genuine issue as to any material fact determinative of the issue of liability [Rule 56(c) F.R.C.P.].

The stipulations filed by the parties reflect the following facts:

1. Plaintiff is a resident of Kansas City, Jackson County, Missouri, and presently resides and at all times relevant hereto did reside at 3001 East 32nd Street, Kansas City, Missouri. Defendant HDCIC is a not-for-profit corporation organized under the laws of the State of Missouri and has its principal place of business at 306 East 12th Street, Kansas City, Missouri.

2. On June 27, 1973, plaintiff and defendant entered into a credit transaction (hereinafter referred to as the "transaction") by the terms of which plaintiff borrowed from defendant the sum of $4,000.00 on which a finance charge of $441.00 was imposed by defendant, and which required payment by the plaintiff of a total of $4,441.00 in 84 monthly installments of $52.88 each.

3. In connection with the transaction, plaintiff, on June 27, 1973, executed a document entitled "Home Improvement Revolving Loan Fund Loan Agreement" (Plaintiff's Exhibit 1), and a promissory note (Plaintiff's Exhibit 2) in favor of defendant HDCIC.

4. On June 27, 1973, plaintiff, to secure payment of her obligation under the transaction, also executed a Deed of Trust (Plaintiff's Exhibit 4) in favor of defendant HDCIC and James H. Reed, Trustee, on her property located at 3001 East 32nd Street, Kansas City, Missouri.

5. The said $4,000.00 which plaintiff borrowed from defendant was combined by defendant with $500.00 paid by plaintiff to defendant, and defendant subsequently distributed the total $4,500.00 as follows: $1,480.00 was paid by defendant to J & T Construction Company, and $3,020.00 was paid to Keys Construction Company for certain home improvement and repair work allegedly done by said contractors on the residence of plaintiff located at 3001 East 32nd Street, Kansas City, Missouri.

6. In addition to the $500.00 sum contributed by plaintiff, plaintiff contributed an additional $52.00 which was distributed by defendant as follows: $20.00 was paid for a title report on plaintiff's residence; $8.00 was paid for a credit report on plaintiff; and $24.00 was paid by defendant to record, in the Office of the Jackson County Recorder of Deeds as security for said $4,000.00 loan, the second

Deed of Trust (Plaintiff's Exhibit 4) on plaintiff's said residence.

7. At the time of the transaction between plaintiff and defendant, defendant, in the ordinary course of its business regularly extended credit in the form of loans of money to individuals for the purpose of financing improvements and repairs on the private residence of each such individual, on each of which obligation defendant imposed a finance charge, and each of which obligation was repayable to defendant in more than four installments.

8. In connection with the transaction defendant on June 27, 1973, delivered to plaintiff a document entitled "TRUTH–IN–LENDING DISCLOSURE STATEMENT" (Plaintiff's Exhibit 3), which is the only document delivered by defendant to plaintiff upon which defendant relies in providing proper Truth-In-Lending disclosures, exclusive of those disclosures required by § 226.9 of Regulation Z and § 125 of the Truth-In-Lending Act, to the plaintiff in connection with the transaction.

9. In connection with the transaction, defendant, on June 27, 1973, delivered to plaintiff a document entitled "NOTICE OF OPPORTUNITY TO RESCIND TRANSACTION" (Plaintiff's Exhibit 7), which is the only document delivered by defendant to plaintiff upon which defendant relies in providing plaintiff proper notice of her right to rescind the transaction as required by § 226.9(b) of Regulation Z and § 125 of the Truth-in-Lending Act.

10. The size of type contained in the said "Notice of Opportunity to Rescind Transaction" (Plaintiff's Exhibit 7) is less than 12 point type [1] in violation of § 226.9 of Regulation Z.

11. The original of a letter (Plaintiff's Exhibit 5) advising defendant of certain alleged violations of Truth-in-Lending Act and Regulation Z in connection with the transaction, was mailed on behalf of plaintiff on September 3, 1975, to Mr. Karl Arterbery, Executive Director of defendant HDCIC, by plaintiff's attorney at that time, James S. Bolan, and was received by defendant on September 4, 1975.

12. The original of a letter (Plaintiff's Exhibit 6) rescinding the transaction was mailed on behalf of plaintiff on September 3, 1975, to Mr. Karl Arterbery, Executive Director of defendant HDCIC, by plaintiff's attorney at that time, James S. Bolan, and was received by defendant on September 5, 1975.

13. Prior to the sending on plaintiff's behalf of Plaintiff's Exhibits 5 and 6 to defendant, plaintiff had paid to defendant a total of $1,067.60 toward her original obligation on the transaction between plaintiff and defendant.

14. Defendant has not at any time returned to the plaintiff any of the money paid by her to defendant in connection with the transaction.

15. Defendant has not taken any action to reflect the termination of the Deed of Trust (Plaintiff's Exhibit 4) executed by plaintiff in connection with the transaction.

16. On November 21, 1975, defendant, through its authorized agent and administrative officer, Robert J. Kelly, Jr., sent to plaintiff a letter (Plaintiff's Exhibit 8), demanding alleged past-due payments.

This Court has jurisdiction pursuant to 28 U.S.C. § 1337 and 15 U.S.C. § 1635 and § 1640(d) and (e).

The parties have stipulated to the execution and genuineness of the following documents which are before the Court:

Plaintiff's Exhibit 1: "Housing Development Corporation and Information Center Home Improvement Revolving Loan Fund Agreement" signed by plaintiff on June 27, 1973;

Plaintiff's Exhibit 2: Promissory note in the principal amount of $4,000.00 signed by plaintiff on June 27, 1973;

---

1. The Court does not agree with this stipulation as a review of the document reveals that the size of the type is twelve point.

Plaintiff's Exhibit 3: TRUTH–IN–LENDING DISCLOSURE STATEMENT" provided to plaintiff by defendant on June 27, 1973;

Plaintiff's Exhibit 4: Deed of Trust executed by plaintiff on June 27, 1973;

Plaintiff's Exhibit 5: Letter on behalf of plaintiff directed to defendant dated September 3, 1975 advising defendant of certain violations of the Truth-in-Lending Act and Regulation Z in connection with the transaction here in question;

Plaintiff's Exhibit 6: Letter on behalf of plaintiff to defendant dated September 3, 1975 in which plaintiff rescinded the loan transaction entered into on June 27, 1973;

Plaintiff's Exhibit 7: "NOTICE OF OPPORTUNITY TO RESCIND TRANSACTION" delivered to plaintiff by defendant on June 27, 1973. Plaintiff thereon acknowledges receipt of two copies on June 27, 1973;

Plaintiff's Exhibit 8: Letter dated November 21, 1975 from defendant to plaintiff in which defendant demanded past due payments.

Based upon the above stipulation of facts and exhibits before the Court, plaintiff's motion for summary judgment is denied for the reasons set forth herein.

We will first consider plaintiff's right to recover damages, costs and attorney's fees as provided under § 1640(a) and the subparagraphs thereunder of Title 15 U.S.C. which briefly provide that where a creditor fails to comply with the requirements of the Truth-in-Lending Act with respect to any person the lender shall be liable to such person:

1640(a)(2)(A)(i) "in the case of an individual action twice the amount of any finance charge in connection with the transaction," and

"(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court."

Plaintiff claims that the defendant violated the mandatory provisions of 15 U.S.C.

§ 1631 and § 226 of Regulation Z in that defendant's Truth-in-Lending Disclosure Statement was defective in that:

(a) the terms "finance charge" and "annual percentage rate" were not printed more conspicuously than other terminology used in the statement; as required in Section 121 of the Act, 15 U.S.C. § 1631 and § 226.6(a) of Regulation Z.

(b) the term finance charge is not properly disclosed in that the term "finance charges" is used in violation of § 226.8(d)(3) of Regulation Z.

(c) the statement failed to itemize the charges included in the "amount financed" as required by Section 129 of the Act, 15 U.S.C. § 1639;

(d) The "Notice of Opportunity to Rescind Transaction" was printed in letters other than 12-point bold faced type; in violation of Section 125 of the Act, 15 U.S.C. § 1635 and § 226.9 of Regulation Z;

(e) The Statement failed to indicate the total of payments and failed to use the term "total of payments"; as required by Section 129 of the Act, 15 U.S.C. § 1639 and § 226.8(b)(3) of Regulation Z.

(f) The disclosures in the statement are not clearly, conspicuously or placed in a meaningful sequence as required by Section 121 of the Act, 15 U.S.C. § 1631 and § 226.6(a) of Regulation Z.

For the purpose of determining the plaintiff's right to recover damages, costs and attorneys fees, the Court assumes that the defendant's Truth-in-Lending Disclosure Statement was defective and in violation of the Act as contended by plaintiff. Upon this assumption the plaintiff is not entitled to recover under 15 U.S.C. § 1640 because her claim for damages, costs and attorney's fee is time barred.

Section 1640(e), Title 15 U.S.C. provides:

"Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."

It is plaintiff's contention that the time limitation for the statutory penalty under § 1640(e) did not run due to defendant's continuing failure to comply with the requirements of 15 U.S.C. § 1635(b) and § 226.9(d) of Regulation Z. We do not agree.

A similar argument was made in the case of *Fenton v. Citizens Savings Assn.,* 400 F.Supp. 874 (W.D.Mo.1975).[2] In rejecting this argument Judge Hunter reasoned "that where the lender has the affirmative duty to make certain disclosures before credit is extended, the violation occurs when the credit is extended without the required disclosure having been made." Id. 880 and he further stated as follows:

Acceptance of a continuing violation theory would permit an action to be brought at any time within one year after the last monthly installment payment was made. Applied to a 20 year installment loan for the purchase of real estate it would be possible to sue successfully approximately 21 years after the execution of the loan contract. Such an interpretation appears unreasonable, and not in accordance with the spirit and intendment of Congress as expressed in the language of subsection 1640(e). It is not to be presumed that Congress intended unreasonable interpretations of its jurisdictional one year time limitation period specifically provided in § 1640(e).

Section 226.8(a) requires that the disclosures must be made "before the transaction is consummated."

In 12 C.F.R. Section 226.2(cc) it states: "A transaction shall be considered consummated at the time a contractual relationship is created between a creditor and a customer irrespective of the time of performance of either party."

A contractual relationship existed between the parties in this case on June 27, 1973. Suit was not filed until June 2, 1976.

The cases of *Wachtel v. West,* 476 F.2d 1062 (6th Cir. 1973) and *Stevens v. Rock Springs National Bank,* 497 F.2d 307 (10th Cir. 1974) clearly reject the argument made by plaintiff in this case.

It appears clear that plaintiff's claim for damages, costs and attorney's fee as provided under § 1640(a) is barred by failure to commence the action within one year as provided in § 1640(e) and this Court so holds.

We now consider the plaintiff's alleged right to rescind the transaction in this case. Her rights in this regard as set forth in § 1635, Title 15 and in § 226.9, Regulation Z. The relevant parts of § 1635 are as follows:

(a) Except as otherwise provided in this section, in the case of any consumer credit transaction in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any real property which is used or is expected to be used as the residence of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under this section and all other material disclosures required under this part, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, an adequate opportunity to the obligor to exercise his right to rescind any transaction subject to this section.

(b) When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within ten days after receipt of a notice of

---

2. Decided by Judge Elmo B. Hunter of this Court.

rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within ten days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it.

. . . . .

(f) An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs earlier, notwithstanding the fact that the disclosures required under this section or any other material disclosures required under this part have not been delivered to the obligor.

The relevant parts of Section 226.9, Regulation Z are as follows:

(a) *General rule.* Except as otherwise provided in this section, in the case of any credit transaction in which a security interest is or will be retained or acquired in any real property which is used or is expected to be used as the principal residence of the customer, the customer shall have the right to rescind that transaction until midnight of the third business day, following the date of consummation of that transaction or the date of delivery of the disclosures required under this section and all other material disclosures required under this part, whichever is later, by notifying the creditor by mail, telegram, or other writing of his intention to do so. Notification by mail shall be considered given at the time mailed; notification by telegram shall be considered given at the time filed for transmission; and notification by other writing shall be considered given at the time delivered to the creditor's designated place of business.

(b) *Notice of opportunity to rescind.* Whenever a customer has the right to rescind a transaction under paragraph (a) of this section, the creditor shall give notice of that fact to the customer by furnishing the customer with two copies of the notice set out below, one of which may be used by the customer to cancel the transaction. Such notice shall be printed in capital and lower case letters of not less than 12 point bold-faced type on one side of a separate statement which identifies the transaction to which it relates. Such statement shall also set forth the entire paragraph (d) of this section, "Effect of rescission." If such paragraph appears on the reverse side of the statement, the face of the statement shall state: "See reverse side for important information about your right of rescission." Before furnishing copies of the notice to the customer, the creditor shall complete both copies with the name of the creditor, the address of the creditor's place of business, the date of consummation of the transaction, and the date, not earlier than the third business day following the date of the transaction, by which the customer may give notice of cancellation. Where the real property on which the security interest may arise does not preclude a dwelling, the creditor may substitute the words "the property you are purchasing" for "your home," or "lot" for "home," where these words appear in the notice.

. . . . .

(d) *Effect of rescission.* When a customer exercises his right to rescind under paragraph (a) of this section, he is not liable for any finance or other charge, and any security interest becomes void upon such a rescission. Within 10 days

after receipt of a notice of rescission, the creditor shall return to the customer any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. *If the creditor has delivered any property* to the customer, the customer may retain possession of it. Upon the performance of the creditor's obligations under this section, the customer shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the customer shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the customer, at the option of the customer. If the creditor does not take possession of the property within 10 days after the tender by the customer, ownership of the property vests in the customer without obligation on his part to pay for it.

　　.　　　.　　　.　　　.　　　.

(h) *Time limit for unexpired right of rescission.* In the event the creditor fails to deliver to the customer the disclosures required by this section or the other material disclosures required by this Part, a customer's right to rescind a transaction pursuant to this section shall expire the earlier of (1) three years after the date of consummation of the transaction, or (2) the date the customer transfers all his interest, both equitable and legal, in the property.

■ At the outset, plaintiff contends that she is entitled to rescind in that the "Notice of Opportunity to Rescind Transaction" was not printed "in capital and lower case letters of not less than 12 point bold-faced type" as provided in § 226.9(b) in Regulation Z. Neither § 1602, Title 15 U.S.C. nor § 226.2 of Regulation Z defines what is meant by 12 point bold-faced type. A review of plaintiff's Exhibit 7 reflects that the said notice was printed in "capital and lower case letters" of "12 point bold-faced type" as measured on a conventional typewriter. Without some specific instruc-

tion directing as to what constitutes "12 point bold-faced type" the Court determines that the notice given in this case met the requirements of the regulation and finds that the defendant is not in violation of § 226.9, Regulation Z in this regard.

■ In § 1635(a), Title 15, U.S.C. and § 226.9(a) of Regulation Z while the 2 are not worded exactly the same, the statute and the regulation both give a debtor the right to rescind the transaction until midnight of the third business day following the consummation of the transaction "or the delivery of the disclosures required under this section and all other *material* disclosures required under this part, whichever is later . . ." (§ 1635(a), 15 U.S.C.). The disclosures required under the section involved is the written notice of the opportunity to rescind the transaction in 12 point bold-faced type and under § 226.9 it is required that such statement shall set forth the entire Paragraph (d) of this section *"Effect of rescission". It is also to contain* the address of the creditor's place of business, the date of consummation of the transaction, and the date not earlier than the third business day following the date of the transaction, by which the customer may give notice of cancellation. It also provides that the customer shall be furnished 2 copies of the notice, one of which may be used by the customer to cancel the transaction.

The notice in this case bears the signature of the plaintiff acknowledging receipt of two copies of the notice. The notice indicates that the transaction was entered into on June 27, 1973 and that notice of cancellation would have to be made not later than midnight, July 2, 1973. Paragraph (d) of § 226.9, Regulation Z "Effect of Rescission" is set forth in the notice. Therefore, there was full compliance as to disclosures required in the statute or regulation.

■ We next turn to the term "all other material disclosures required under this part." A review of the Truth-in-Lending Act will reflect that Part B includes § 1631

through 1645 inclusive. Plaintiff takes the position that the failure to disclose all matters required under Part B gives the plaintiff the right to rescind; however, the statute and regulation only grant the right to rescind for failure to deliver "all other *material* disclosures required under this part."

In *LaGrone v. Johnson*, 534 F.2d 1360 (9th Cir. 1976) it was held that each of the following constituted an omission of a material disclosure: (1) failure to disclose that the note and deed of trust contained an acceleration clause; (2) the amount financed was not labeled and disclosed in the broker's statement; and (3) the statement included information not required to be disclosed and was not clearly delineated.

The following is a reproduction of the defendant's Truth-in-Lending Disclosure Statement (Plaintiff's Exhibit 3):

---

### HOME IMPROVEMENT REVOLVING LOAN FUND

#### TRUTH IN LENDING DISCLOSURE STATEMENT

SECURED LOANS:
Loan is secured by Mortgage (Or Deed of Trust) of even date covering property at:

 3001 East 32nd Street

(Address including zip code)

BORROWER(S):
Vonsella Harvey

APPLICATION NO: 2D–89–491

Copy of Deed of Trust will be furnished Borrower as promptly as practicable.

---

ESCROW AMOUNT: Monthly provision for taxes, insurance, etc. (subject to future changes as necessary) ................$ None

MORTGAGE CLOSING COSTS:

| | |
|---|---|
| Title Report, Title Insurance, or Abstract Company Fee | $ 28.00 |
| Recording Fees | $ 24.00 |
| Transfer Taxes | $ None |
| Notary and Legal Fees | $ None |

---

AMOUNT FINANCED: $ 4,000.00

FINANCE CHARGES:
  Interest  $ 441.00
  Prepare Finance Charge
  (Inspection Fee)  $ None

ANNUAL PERCENTAGE RATE: 3 %

TOTAL NUMBER OF PAYMENTS 84

payable in monthly installments of

$ 52.88

First payment due on September 1, 1973 in the amount of $ 52.88 and all others on first day of month starting October 1, 1973 .

LATE PAYMENT CHARGE: 1% per calendar month on amounts unpaid for one month of more after due date.

---

I acknowledge receipt of a copy of this statement:

(Date)

(Witness)

(Signature(s) of Borrower(s))

A letter setting forth the opinion of the Federal Reserve Board staff is contained in Federal Register Volume 42, No. 144, July 27, 1977 in which it is stated in part:

Section 226.9(a) provides that the three-day right of rescission begins on the date the transaction is consummated or the date of delivery of the rescission notice "and all other *material* disclosures required by this Part, whichever is later." It is staff's opinion that where a creditor is making use of the provisions of § 226.-8(g) and has provided its customers with printed information from which the items listed in that section can be determined, this information constitutes the "other material disclosures" referred to in § 226.9(a).

■ Although Federal Reserve Board staff opinion letters interpreting the Board's own regulation and the statute giving the Board authority to promulgate that regulation are not absolutely binding on the courts, it has been repeatedly held that a Court called upon to interpret Regulation Z owes great deference to the construction placed on that regulation by the administrative officers of the Federal Reserve Board. See, e. g., *Bone v. Hibernia Bank*, 493 F.2d 135 (9th Cir. 1974); *Philbeck v. Timmers Chevrolet, Inc.*, 499 F.2d 971 (5th Cir. 1974); and *Bissette v. Colonial Mortgage Corp.*, 155 U.S.App.D.C. 360, 477 F.2d 1245 (1973). Cf. *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973).

A review of defendant's disclosure statement clearly reflects that it revealed the amount of the loan, the finance charge, the number, frequency and amount of payments, and the annual percentage rate. § 226.8(g) of Regulation Z also mentions "the total scheduled payments". It is not clear as to what is meant by the term "total scheduled payments". It is questionable whether it was meant for this term to mean the same as "the sum of such payments using the term, 'total of payments'" as can be found in § 226.8(b)(3). As can be readily noted, there is a variation between the term "the sum of such payments using the term, 'total of payments'" and the term "total scheduled payments". Assuming that it was intended in § 226.8(g) that the disclosure statement include the term "total of payments" and then disclose the sum of same, § 226.8(g) further provides in the disjunctive "or are determinable from the creditor's printed material distributed to the public, in the contract of loan, or in other printed material delivered or made available to the customer."

■ A review of the defendant's "Truth-in-Lending Disclosure Statement" will reflect that the total of payments is easily ascertainable i. e. $4,441.00. This Court makes the determination that defendant's statement delivered to plaintiff did make all material disclosures as required by § 1635 and § 226.9 of Regulation Z. This being true under both the statute and the regulation, plaintiff had only until midnight, July 2, 1973 in which to give her written notice of rescission. Her notice of rescission was not given until September 3, 1975, over two years after her right to rescind had expired. Therefore, that portion of the plaintiff's motion for summary judgment relating to her right to rescind is denied.

A review of this file will reflect that defendant has not filed a counter motion for summary judgment nor is there on file a motion to dismiss which could be considered by the Court as a motion for summary judgment. Upon the filing of a motion for summary judgment by defendant, the same will be granted based upon the reasoning set forth in this order.

IT IS SO ORDERED.